Long X. Do (SBN 211439)
ATHENE LAW, LLP
5432 Geary Blvd. #200
San Francisco, California 94121
Telephone: (415) 686-7531
long@athenelaw.com

Shari Covington (SBN 312078) (*pro hac vice*)
CALIFORNIA MEDICAL ASSOCIATION
CENTER FOR LEGAL AFFAIRS
1201 K Street, Suite 800
Sacramento, California 95814-3933
Telephone: (916) 444-5532
scovington@cmadocs.org

*Attorneys for California Medical Association*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI LILLY AND COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>AIOS INC. d/b/a FELLA HEALTH AND DELIAH, FELLA MEDICAL GROUP P.A., FELLA MEDICAL GROUP P.C.,<br><br>Defendants. | Case no. 4:25-cv-03535-HSG<br>Action Filed: April 23, 2025<br><br>**AMICUS CURIAE BRIEF BY THE CALIFORNIA MEDICAL ASSOCIATION IN SUPPORT OF PLTFF. LILLY'S OPPOSITION TO DEFS.' MOTION TO DISMISS**<br><br>Hrg Date:    October 02, 2025<br>Time:         2:00 pm<br>Courtroom: 2, 4th Floor<br>Judge:        Hon. Haywood S. Gilliam Jr. |

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................... 1

INTERESTS OF THE AMICUS CURIAE ............................................................................... 2

DISCUSSION ........................................................................................................................... 3

    A. CPOM Traditionally Was Designed to Thwart Open Interference with the Practice of Medicine by Non-Licensed Individuals and Entities. ....................................................... 3

    B. CPOM Has Evolved to Regulate Modern Arrangements and Structures that Create Unacceptable Risks of Interference with the Practice of Medicine. .................................... 5

    C. Lilly's Complaint Presents Serious Violations of CPOM That Potentially Could Interfere in the Practice of Medicine for Many Patients. ...................................................... 8

    D. CPOM Has Always Been Advanced and Developed through Private and Public Enforcement. ....................................................................................................................... 10

        1. The Medical Practice Act Expressly Recognizes Private Enforcement of CPOM. ...... 10

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*,
   no. 22-cv-421-CRB, 2022 WL 2037950, at *8 (N.D. Cal. May 27, 2022) ........................ 3, 11

*Benjamin Franklin Life Assurance Co. v. Mitchell*,
   14 Cal. App. 2d 654 (1936).............................................................................................. 4

*Blank v. Palo-Alto-Stanford Hospital Center*,
   234 Cal. App. 2d 377 (1965)............................................................................................ 5

*California Association of Dispensing Opticians v. Pearle Vision Center, Inc.*,
   143 Cal. App. 3d 419 (1983)............................................................................................ 5

*California Physicians' Service v. Aoki Diabetes Research Institute*,
   163 Cal. App. 4th 1506 (2008) ........................................................................................ 5

*Complete Service Bureau v. San Diego Med. Soc.*,
   43 Cal. 2d 201 (1954) (Spence, J., dissenting) ............................................................ 3, 4

*Conrad v. Medical Bd.*,
   48 Cal. App. 4th 1038 (1996) .......................................................................................... 5

*Eli Lilly and Co. v. Mochi Medical, Inc.*,
   no. 3:25-cv-3534-JSC ..................................................................................................... 3

*Marik v. Superior Court*,
   191 Cal. App. 3d 1136 (1987).......................................................................................... 6

*Pacific Employers Ins. Co. v. Carpenter*,
   10 Cal. App. 2d 592 (1935).............................................................................................. 4

*People v. Cole*
   (2006) 38 Cal. 4th 964 (2006).......................................................................................... 5

*People v. Superior Court (Cardillo)*,
   218 Cal. App. 4th 492 (2013) .......................................................................................... 6

*People ex rel. State Bd. of Med. Examiners v. Pacific Health Corp.*,
   12 Cal. 2d 156 (1938) .................................................................................................. 3, 5

**Statutes**

Bus. & Prof. Code §125.7 ................................................................................................... 10

Bus. & Prof. Code §125.8 .................................................................................................... 10

Bus. & Prof. Code §2052 ........................................................................................... 3, 8, 9, 10

Bus. & Prof. Code §2242 ...................................................................................................... 9

Bus. & Prof. Code §2311 .................................................................................................... 10

Bus. & Prof. Code §2400 ................................................................................................ 3, 8

Bus. & Prof. Code §17200 .................................................................................................. 11

**Other Authorities**

54 Ops. Cal. Atty. Gen. 126 (1971) ...................................................................................... 7

55 Ops. Cal. Atty. Gen. 103 (1972) ...................................................................................... 7

65 Ops. Cal. Atty. Gen. 223 (1982) ................................................................................... 4, 7

83 Ops. Cal. Atty. Gen. 170 (2000) ...................................................................................... 7

FRAP 29................................................................................................................................ 1

Medical Board, Guidance on Corporate Practice of Medicine
  <https://www.mbc.ca.gov/Licensing/Physicians-and-Surgeons/Practice-
  Information/> (visited on 7/17/2025) ............................................................................ 6, 7

iii

The California Medical Association ("CMA") hereby submits this amicus curiae brief in support of plaintiff Eli Lilly and Company's ("Lilly") opposition [dkt. 65] to the motion to dismiss [dkt. 58] by defendants Aios Inc. (d/b/a Fella Health and Delilah) (separately "Fella Health" and "Delilah," collectively "Fella") and Fella Medical Group P.A. and Fella Medical Group P.C. (collectively "Fella Medical Group"). All defendants collectively, "Defendants."

## INTRODUCTION

For more than 150 years, CMA has served as the voice of California's House of Medicine to advocate for the medical profession against incursions and transgressions on the ability of physicians to provide the highest levels of medical care to their patients. A bedrock doctrine in such efforts is a century-old California law prohibiting lay entities and non-licensed individuals from practicing medicine in this State. This law, prohibiting the "corporate practice of medicine" ("CPOM"), has abided through many decades and has been affirmed, confirmed, and reinvigorated through scores of opinions in the state courts and regulatory agencies. CPOM is squarely and expressly raised in this action brought by Lilly to challenge an alleged scheme by Defendants to market and provide weight management drugs and services.

CPOM is a broad and robust law that touches on nearly every aspect of the delivery of medical care by licensed physicians in California. It springs from a fundamental public policy to protect and preserve the independence of California-licensed physicians' professional judgment in the care of their patients, free from external forces that can interfere with the physician-patient relationship and undermine public health. In its classic form, CPOM prohibits lay entities and individuals from employing doctors or otherwise directly dictating the manner, scope, or type of care that doctors provide. CPOM has also adapted to keep pace with the modernization, if not the corporatization, of medicine to address joint ventures and other business alignments that improperly interfere with the practice of medicine in indirect ways.

In their motion to dismiss, Defendants do not mount a full-throated attack on the sufficiency of Lilly's CPOM-related allegations, which CMA briefly explains below do in fact satisfy the pleading requirements to state actionable CPOM violations.

CMA bolsters Lilly's arguments below with a more robust explication of CPOM's evolution over more than a century of practice and jurisprudence. Defendants' misguided arguments for abstention or primary jurisdiction put into sharp relief the continuing need for robust CPOM enforcement. In short, it is through private and public enforcement that CPOM has been able to adapt to the modernization of medicine while abiding by the original policy underpinnings to preserve physician independence and protect the public. That is why the Medical Board has never, to CMA's knowledge, attempted to thwart or assert exclusive jurisdiction over private actions. CMA accordingly urges the Court to reject Defendants' request to short-circuit CPOM enforcement in this action.[1]

**INTERESTS OF THE AMICUS CURIAE**

CMA is a non-profit, incorporated professional physician association of over 50,000 members, most of whom practice medicine in all modes and specialties throughout California. CMA's primary purposes are "to promote the science and art of medicine, the care and well-being of patients, the protection of public health, and the betterment of the medical profession." CMA and its members share the objective of promoting high quality, safe, and cost-effective health care for the people of California.

For many decades, CMA has been the leading voice advocating for robust enforcement of CPOM by private and government actors. CMA consistently engages in legislative advocacy concerning CPOM doctrine by supporting measures that reinforce its protections, opposing efforts that erode or eliminate it, and evaluating proposed exceptions with careful attention to their impact on physician autonomy and the integrity of patient care. CMA also regularly files amicus briefs in federal and state courts on issues impacting the practice of medicine, including cases like this involving interpretations and application of CPOM. In fact, Judges Breyer and Corley of this Court recently permitted CMA to file an amicus brief to assist on CPOM issues:

---

[1] CMA takes no position on the other allegations and causes of action in Lilly's Complaint. CMA also takes no position on whether Lilly will be able to meet its burden to prove violations of CPOM. Those are issues outside the scope of the motion to dismiss and this brief.

*Am. Acad. of Emergency Med. Physician Grp., Inc. v. Envision Healthcare Corp.*, no. 22-cv-421-CRB ("*Envision*"); and *Eli Lilly and Co. v. Mochi Medical, Inc.*, no. 3:25-cv-3534-JSC ("*Mochi*"). The CPOM issues raised by Defendants' motion directly bear upon the interests and work of CMA on behalf of its physician members and constituents.

**DISCUSSION**

**A.    CPOM Traditionally Was Designed to Thwart Open Interference with the Practice of Medicine by Non-Licensed Individuals and Entities.**

The CPOM doctrine is not new. California first codified its prohibition on the unauthorized practice of medicine in 1913, shortly after rejecting legislation that would have allowed corporations to employ physicians directly. Over the ensuing century, the principle evolved into a bedrock protection against economic and managerial pressures compromising medical judgment. The case books show that California courts recognized CPOM as essential to preserving the independence and integrity of medical care in the first half of the 20th century. *See, e.g.*, *People ex rel. State Bd. of Med. Examiners v. Pacific Health Corp.*, 12 Cal. 2d 156, 160 (1938) ("[T]he principal evils attendant upon corporate practice of medicine spring from the conflict between the professional standards and obligations of the doctors and the profit motive of the corporation employer"). By 1954, judges had recognized an expanding reach of CPOM doctrine to "consistently condemn[]" schemes involving lay individuals "intervening as a 'middleman' for profit in establishing the professional relationships between a [medical] group … and members of the public." *Complete Service Bureau v. San Diego Med. Soc.*, 43 Cal. 2d 201, 218 (1954) (Spence, J., dissenting).

Notwithstanding the developing case jurisprudence, it must be remembered that CPOM is a statutory doctrine that springs from the California Medical Practice Act, particularly Business and Professions Code sections 2052 and 2400. Those provisions prohibit any person from practicing medicine without a license issued by the Medical Board of California. Together, they establish that corporations and other artificial legal entities may not hold professional rights, privileges, or powers (i.e., hold medical licenses). These statutes form the foundation of CPOM,

which broadly prohibits corporations and other lay entities from directly or indirectly practicing or controlling the practice of medicine, whether through influence, control, or direct intervention.

The California Attorney General has articulated a different dimension to the purposes underlying CPOM, rooted in the ability of regulatory bodies to protect the public:

> [F]irst, that the presence of a corporate entity is incongruous in the workings of a <u>professional regulatory licensing scheme which is based on personal qualification, responsibility and sanction</u>, and second that the interposition of a lay commercial entity between the professional and his/her patients would give rise to divided loyalties on the part of the professional and would destroy the professional relationship into which it was cast.

65 Ops. Cal. Atty. Gen. 223, 225 (1982) (emphasis added). In other words, CPOM ensures that medical care is delivered by physicians who are licensed and subject to regulatory control and accountability. Otherwise, patients may be vulnerable to practitioners that answer to no licensing body. CPOM thus ensures that those who make decisions which affect, generally or indirectly, the provision of medical services comply with the standards for state licensure: 1) understand the quality of care implications of those decisions; 2) have a professional ethical obligation to place the patient's interest foremost; and 3) are subject to the full panoply of the enforcement powers of the Medical Board, the state agency charged with the administration of the Medical Practice Act.

CPOM today is recognized to be robust and broad, touching upon virtually all aspects of the modern practice of medicine to prohibit practices, schemes, and arrangements that directly or indirectly affect how physicians care for their patients. The case law to enforce CPOM and develop its application is legion. *See, e.g.*, *Pacific Employers Ins. Co. v. Carpenter*, 10 Cal. App. 2d 592, 594-96 (1935) (holding that for-profit corporation may not engage in business of providing medical services and stating that "professions are not open to commercial exploitation as it is said to be against public policy to permit a 'middle-man' to intervene for a profit in establishing a professional relationship between members of said professions and the members of the public"); *Benjamin Franklin Life Assurance Co. v. Mitchell*, 14 Cal. App. 2d 654, 657 (1936) (same); *Complete Service Bureau v. San Diego Medical Society*, 43 Cal. 2d 201, 211 (1954) (non-profit corporations may secure low-cost medical services for their members only if they do not

interfere with the medical practice of the associated physician); *Blank v. Palo-Alto-Stanford Hospital Center*, 234 Cal. App. 2d 377, 390 (1965) (non-profit hospital may employ radiologists only if the hospital does not interfere with the radiologists' practice of medicine); *California Association of Dispensing Opticians v. Pearle Vision Center*, *Inc.*, 143 Cal. App. 3d 419, 434 (1983) (CPOM prohibits technical agreements affecting the manner in which professionals practice because it "requires the professional's undivided responsibility and freedom from commercial exploitation"); *Conrad v. Medical Bd.*, 48 Cal. App. 4th 1038, 1041 (1996) (recognizing "[t]he 'principal evils' thought to spring from the corporate practice of medicine are 'the conflict between the professional standards and obligations of the doctors and the profit motive of the corporation employer,' and applying CPOM against quasi-public health care district hospitals); *California Physicians' Service v. Aoki Diabetes Research Institute*, 163 Cal. App. 4th 1506, 1516 (2008) ("While the principal evils of the corporate practice of medicine may arise from the stress the profit motive places on physicians, the courts have also noted the danger of lay control").

**B.     CPOM Has Evolved to Regulate Modern Arrangements and Structures that Create Unacceptable Risks of Interference with the Practice of Medicine.**

As modern medicine advances and becomes more decentralized and commercialized, a strain of CPOM is crystallizing to recognize that seeming "business decisions" in a medical practice setting can result in undue influence over the practice of medicine. This strain focuses not on whether there is open interference with the practice of medicine but on the conditions in which physicians practice, such as the employment relationship, that create unacceptable risks of interference. Early cases enforcing CPOM had laid the seed for such a more nuanced, prophylactic approach in its modern enforcement. *See, e.g.*, *Pacific Health Corp.*, 12 Cal. 2d at 158 (CPOM cannot be "circumvented by technical distinctions in the manner in which the doctors are engaged, designated or compensated by the corporation"). Today, courts readily recognize that CPOM "restricts the <u>relationships</u> that [doctors] may have with corporations." *People v. Cole* (2006) 38 Cal. 4th 964, 970 (2006).

In *Marik v. Superior Court*, 191 Cal. App. 3d 1136, 1140 (1987), the court recognized that it is difficult if not impossible to isolate "purely business" decisions from those affecting the quality of care. Notably, in holding that a provisional director of a medical corporation was required either to be a physician or other qualified licensed person, the *Marik* court recognized the interrelated nature of these concerns and observed:

> For example, the prospective purchase of a piece of radiological equipment could be implicated by business considerations (cost, gross billings to be generated, space and employee needs), medical considerations (type of equipment needed, scope of practice, skill levels required by operators of the equipment, medical ethics) or by an amalgam of factors emanating from both business and medical areas. The interfacing of these variables may also require medical training, experience, and judgment.

*Id.* at 1140 n.4. Along the same line, in *People v. Superior Court (Cardillo)*, 218 Cal. App. 4th 492 (2013), lay owners and operators of medical marijuana clinics were held to criminally violate CPOM where they controlled the operations of the clinics by employing licensed physicians to issue recommendations for medical marijuana, setting the physicians' hours, soliciting and scheduling patients, collecting fees from the patients, and paying the physicians a percentage of those fees. *Id.* at 498.

The Medical Board of California has issued formal guidance on the various ways that CPOM can be implicated. *See* Medical Board, Guidance on Corporate Practice of Medicine <https://www.mbc.ca.gov/Licensing/Physicians-and-Surgeons/Practice-Information/> (visited on 7/17/2025). The guidance shows that the Medical Board believes certain areas in the business of medicine are rife for CPOM abuse:

- Ownership is an indicator of control of a patient's medical records, including determining the contents thereof, and should be retained by a California-licensed physician;
- Selection, hiring/firing (as it relates to clinical competency or proficiency) of physicians, allied health staff and medical assistants;
- Setting the parameters under which the physician will enter into contractual relationships with third-party payors;
- Decisions regarding coding and billing procedures for patient care services; and
- Approving of the selection of medical equipment and medical supplies for the medical practice.

6

*Id.* The California Attorney General has echoed the Medical Board's more expansive view of CPOM's application. *See, e.g.*, 83 Ops. Cal. Atty. Gen. 170 (2000) ("The selection of a radiology site with appropriate equipment and operational personnel best suited for the performance of a diagnostic radiology study of a patient's particular physical disorder, as well as the selection of a qualified radiologist to view and interpret the films, would involve the exercise of professional judgment and evaluation as part of the practice of medicine.").

The California Attorney General confirms that CPOM prohibits not only lay entities engaging in or interfering with the practice of medicine but also hospitals and other lay entities from employing or contracting with physicians. *See* 11 Ops. Cal. Att. Gen. 236, 237 (1948). In so finding, the Attorney General observed that several courts have rejected the notion that a CPOM violation depends on actual interference with the practice of medicine. *See id.* at 238-39. Rather, CPOM categorically prohibits certain relationships and business structures joining physicians and lay entities where there is "a tendency to debase the profession," or where there is potential that a lay entity would be able to directly or indirectly influence or control physicians. *Id.* at 239.

The employment relationship is a prototypical example of a prohibited relationship whereby a lay entity gains undue influence over physicians. The Attorney General has issued opinions reaffirming this prophylactic approach to enforcement of CPOM and found numerous types of relationships to be prohibited based on the <u>potential</u> interference with the practice of medicine created by such relationships and the presence of a potential for the physician to have divided loyalties. *See* 54 Ops. Cal. Atty. Gen. 126 (1971) (nonprofit hospital may not employ physicians to provide professional services); 55 Ops. Cal. Atty. Gen. 103 (1972) (CPOM prohibits lay entities from having an economic interest in the net profits of a medical practice); 65 Ops. Cal. Atty. Gen. 223 (1982) (general business corporation may not lawfully engage licensed physicians to treat employees even though physicians act as independent contractors).

///

///

### C. Lilly's Complaint Presents Serious Violations of CPOM That Potentially Could Interfere in the Practice of Medicine for Many Patients.

Lilly's Complaint includes many allegations that, if proven, depict both classic and more nuanced violations of CPOM. In toto, the Complaint alleges a systematic scheme by Fella Health and Fella Medical Group, operating under the direction of a non-licensed owner, to direct, influence, or interfere with the medical care of patients in what appears to be a closely aligned, if not wholly "captured," professional corporation. *See* Compl. ¶¶4, 46. California has long recognized the dangers inherent in allowing lay entities to control the practice of medicine. The statutory framework codified in the Business and Professions Code expressly forbids both the corporate practice of medicine and the unlicensed practice of medicine, underscoring the Legislature's intent to preserve independent medical judgment. *See* Bus. & Prof. Code §§ 2400 et seq., 2052.

Lilly alleges that Fella Health, acting through its non-physician founder and executives, unlawfully engages in and controls the practice of medicine in violation of California law. *See* Compl. ¶¶4,47,–63. It is alleged that Fella markets itself as a telehealth provider of compounded tirzepatide but, in practice, functions as a lay corporation directing medical judgment. Its unlicensed executives—including CEO and founder Richie Cartwright, whose background is in economics and statistics rather than medicine—allegedly exercise direct authority over Fella Medical Group, the professional corporation nominally responsible for patient care. *See* Compl. ¶47. California law strictly prohibits non-physicians from owning, controlling, or influencing medical practices. See Bus. & Prof. Code §§ 2400, 2052. Yet Fella openly defies these prohibitions, as Lilly alleges, by placing Cartwright and other lay employees in positions of authority where they dictate patient care and clinical decision-making. *See* Compl. ¶¶51–76.

The Complaint further alleges that non-physician employees at Fella—including Cartwright, its Head of Sales and Community Jordan Pellikan, and Customer Success Lead Stanley Whitaker—routinely provide medical advice to patients over Reddit, text message, and phone calls. *Id*. These lay personnel instruct patients on titration schedules, recommend dosage increases, and suggest additional prescription drugs such as metformin—all without medical

8

licenses in California or any other state. For example, when a patient reported that Fella's compounded tirzepatide "was not working," Cartwright personally advised the patient to escalate dosing speed to avoid "wasted time," and directed the patient to follow up with Whitaker, another non-physician. *See* Compl. ¶¶52–57. Such alleged conduct exemplifies the unlicensed practice of medicine prohibited by section 2052 and vividly illustrates how Fella substitutes corporate and sales-driven imperatives for independent physician judgment.

Equally troubling are the allegations that Fella alters patient prescriptions en masse for financial and regulatory reasons rather than for medical ones. *See* Compl. ¶¶4, 46, 64–76. Beginning in late 2024, Fella allegedly switched all patients from compounded tirzepatide without additives to formulations adulterated with l-arginine or glycine—neither of which is FDA-approved nor clinically tested for safety or efficacy. *See* Compl. ¶¶2-5, 65. Patients were not consulted in advance, and many only discovered the "surprise additives" upon receipt of their prescriptions, in some cases after experiencing harmful side effects. Within months, Fella reversed course, switching patients back to additive-free tirzepatide, and then again to glycine-containing formulations, all without medical indication or individualized physician determinations. *See* Compl. ¶¶64–71. Such allegations depict arbitrary, corporate-driven decisions in the prescribing context, motivated by a belief that formula changes could evade FDA restrictions, epitomize the corporate practice of medicine in its most pernicious form: lay entities supplanting the medical judgment of licensed physicians.

Finally, Lilly alleges that Fella falsely represents these en masse prescription changes as "personalized prescriptions." *See* Compl. ¶¶5, 74–75. Allegedly, patients receive a standardized, one-size-fits-all product dictated by Fella's corporate strategy, not the judgment of their physicians. California law requires that dangerous drugs be prescribed only after an appropriate prior examination and upon a medical indication. *See* Bus. & Prof. Code § 2242. By allowing unlicensed executives to direct patient care, by altering prescriptions without individualized medical justification, and by mischaracterizing those prescriptions as "personalized," Fella allegedly violates not only CPOM in both its classic and modern forms but also section 2242's

9

explicit statutory mandate. *See* Compl. ¶¶75–78. If proven, these allegations establish a business model in which lay corporate interests usurp physician independence, thereby undermining patient safety and flouting the legal safeguards designed to preserve the integrity of medical practice in California.

**D.    CPOM Has Always Been Advanced and Developed through Private and Public Enforcement.**

As illustrated by the spectrum of cases over many decades that are cited and discussed above, the scope and contours of CPOM enforcement have been developed and adapted to the modern business of medicine through a combination of private and public enforcement.

**1.   The Medical Practice Act Expressly Recognizes Private Enforcement of CPOM.**

This Court is the proper forum to adjudicate Lilly's CPOM claims. For more than a century, California courts have developed and applied the corporate practice of medicine doctrine, recognizing its central role in preserving physician independence and patient safety. The Legislature has likewise embedded CPOM into the Medical Practice Act, expressly providing for both public and private enforcement mechanisms. Nothing in the Act suggests that jurisdiction over CPOM enforcement lies exclusively—or even primarily—with the Medical Board. To the contrary, judicial enforcement has always been an integral feature of CPOM's prophylactic purpose. *See* Bus. & Prof. Code §§125.7, 125.8, 2311. Critically, subdivision (c) of section 2052 provides: "The remedy provided in this section shall not preclude any other remedy provided by law."

Although Defendants have not argued that this Court lacks jurisdiction in deference to the Medical Board, CMA considers it important that the Court recognize this issue as settled. Jurisdiction over CPOM enforcement is not confined to the Medical Board, and any suggestion to the contrary would misapprehend more than a century of jurisprudence. California courts have long served as the primary forum for the development and application of CPOM, precisely because courts are uniquely situated to address the systemic, structural, and commercial dimensions of unlawful lay control that often extend well beyond the Board's disciplinary

purview. By reaffirming that the courts retain jurisdiction, this Court continues a tradition essential to the doctrine's vitality and prophylactic effect.

Further support for private enforcement comes from California's Unfair Competition Law (UCL), which permits injunctive relief for "unlawful, unfair or fraudulent business act[s] or practice[s]." Bus. & Prof. Code § 17200. A violation of CPOM constitutes an "unlawful" business practice under this provision. In *American Academy of Emergency Medicine Physician Group, Inc. v. Envision Healthcare Corporation*, no. 22-cv-00421-CRB, 2022 WL 2037950, at *8 (N.D. Cal. May 27, 2022), Judge Breyer recognized that allegations of CPOM violations—specifically, the use of lay control over medical decision-making—could support a private UCL action. There, the court acknowledged the viability of claims seeking to enjoin unlawful corporate control over the practice of medicine, consistent with the purpose of CPOM to preserve physician independence and protect patient care.

Indeed, private enforcement plays a vital role precisely because the Medical Board's authority is not comprehensive; nor is the Medical Board necessarily well-positioned to adjudicate the full range of harms caused by CPOM violations – particularly where those violations are systemic, commercial in nature, or linked to broader unfair competition. As illustrated above, CPOM has evolved to touch modern business structures, an area in which the courts, not the Medical Board, have consistently been the decisive arbiters. Private litigants with standing under the UCL or otherwise directly injured by CPOM-violations are critical to the doctrine's development and continued force.

Private enforcement is not merely permissible; it is essential to safeguard against erosion of the physician-patient relationship. Many of the cases that shaped CPOM jurisprudence were brought by private litigants who advanced the doctrine's application to novel and increasingly complex schemes through which lay entities sought to control medical practice. Lilly's CPOM allegations fall squarely within that tradition. Moreover, Lilly's claims are directed at the use of potentially captive medical corporations as the mechanism for lay control—a phenomenon that CMA believes represents the current frontier of CPOM enforcement. For these reasons, this Court

11

is the proper and necessary forum to hear Lilly's CPOM claims and ensure that California's longstanding public policy against the corporate practice of medicine remains meaningful and enforceable.

## CONCLUSION

For the foregoing reasons as well as the reasons stated in Lilly's opposition to the motion to dismiss, CMA respectfully urges the Court to decline Defendants' request that the Court abstain from adjudicating Lilly's CPOM claims in this action or otherwise dismissing those claims.

Dated:  August 19, 2025    Respectfully submitted,

ATHENE LAW, LLP
CALIFORNIA MEDICAL ASSOCIATION,
CENTER FOR LEGAL AFFAIRS

By:    */s/ Long X. Do*
           LONG X. DO
*Attorneys for Amicus Curiae CALIFORNIA MEDICAL ASSOCIATION*

**FRAP 29 DISCLOSURE**

Pursuant to Federal Rule of Appellate Procedure, rule 29(a)(4)(E), the undersigned counsel for the California Medical Association represents that no party or party's counsel (i) authored this amicus brief in whole or in part; (ii) contributed money that was intended to fund preparing or submitting this brief; or (iii) contributed money that was intended to fund preparing or submitting the brief, other than the amicus curiae, its members, or its counsel.

Dated:  August 19, 2025

/s/ Long X. Do
LONG X. DO
Attorney for Amicus Curiae CALIFORNIA MEDICAL ASSOCIATION