UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI LILLY AND COMPANY, | Case No. 25-cv-03535-HSG |
| Plaintiff, | **ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS; AND GRANTING PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE SUR-REPLY** |
| v. | |
| AIOS, INC., et al., | |
| Defendants. | Re: Dkt. Nos. 58, 78 |

Pending before the Court is Defendants' motion to dismiss the complaint filed by Plaintiff Eli Lilly and Company ("Plaintiff" or "Eli Lilly"). *See* Defendants' Motion to Dismiss ("Mot."), Dkt. No. 53; Plaintiff's Opposition ("Opp."), Dkt. No. 65; Defendants' Reply ("Reply"), Dkt. No. 73. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons discussed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion to dismiss.

## I. BACKGROUND

### A. The Parties

Plaintiff Eli Lilly is an international medicine company and pharmaceutical manufacturer that develops and manufactures its medicines in compliance with FDA oversight. Complaint ("Compl."), Dkt. No. 1, ¶¶ 16-18. Pursuant to Eli Lilly's request for FDA approval for sale and marketing in the United States, the FDA approved two medicines sponsored by Eli Lilly, MOUNJARO® and ZEPBOUND®. Compl., ¶¶ 24, 26. Both were developed over a decade and tested in 37 clinical trials. *Id.*

MOUNJARO®, which is FDA-approved to treat type-2 diabetes, and ZEPBOUND®,

United States District Court
Northern District of California

which is approved to treat chronic weight management and obstructive sleep apnea in certain adults, both contain a macromolecule discovered by Eli Lilly called tirzepatide.  Compl., ¶¶ 27-28. Tirzepatide targets patients' GLP-1 (glucagon-like peptide-1) and GIP (glucose-dependent insulinotropic polypeptide) receptors.  *Id.*  Tirzepatide activates both receptors to improve blood sugar control and reduce appetite and food intake.  *Id.*  Both medicines are injectables; that is, they are administered via under-the-skin injections.  Compl., ¶ 29.  According to Eli Lilly, MOUNJARO® and ZEPBOUND® are the only FDA-approved medicines containing tirzepatide in the United States.  Compl., ¶ 29.  Further, the FDA has not approved any tirzepatide product in oral or compounded form.[1]  Compl., ¶¶ 29, 32.

Defendant Aios Inc. (d/b/a Fella Health and Delilah) (separately, "Fella Health" and "Delilah") (collectively, "Fella") is a corporation that operates telehealth platforms focusing on drugs for weight loss.  Compl., ¶ 8.  According to Plaintiff, Fella coordinates with doctor groups Fella Medical Group P.A. and Fella Medical Group P.C. (collectively, "Fella Medical Group") to sell these weight loss drugs.  Compl., ¶ 1.  Delilah and Fella Health are both telehealth platforms, with Delilah marketed towards women, and Fella Health marketed towards men.  Compl., ¶ 8. Through these telehealth platforms, Fella sells weight loss drugs to consumers, including compounded tirzepatide.   Compl., ¶ 47.  Eli Lilly alleges that the founder and CEO of Fella, Richie Cartwright (who does not have a medical degree), "exercises direct and indirect control and influence over" Fella Medical Group, which Plaintiff asserts is the only medical group that services Fella patients.  Compl., ¶¶ 48, 50.

### B. Plaintiff's Allegations

#### i. Eli Lilly Alleges that Fella Engaged in the Unlicensed Practice of Medicine in Multiple Ways.

---

[1] Drug compounding is a "practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes, or alters ingredients of a drug to create a medication tailored to the needs of an individual patient," such as an allergy to a particular ingredient.  Compl., ¶ 30 (citing FDA, Human Drug Compounding (Dec. 18, 2024), https://www.fda.gov/drugs/guidance-compliance-regulatory-information/human-drug-compounding).  The FDA does not review any compounded drugs. Compl., ¶ 31 (citing FDA, Compounding and the FDA: Questions and Answers (Nov. 15, 2024), https://www.fda.gov/drugs/human-drug-compounding/compounding-and-fda-questions-and-answers).

United States District Court
Northern District of California

United States District Court
Northern District of California

Eli Lilly alleges that Fella engages in the unlicensed corporate practice of medicine in violation of California's Medical Practice Act, Cal. Bus. & Prof. Code §§ 2400 *et seq.*, by allowing non-physicians to offer medical advice to customers.  Compl., ¶¶ 51-52.  Specifically, Eli Lilly alleges that Fella, through its founder Cartwright and sales and customer success employees (none of whom are licensed to practice medicine), expressly and repeatedly provides customers with medical advice on social media, such as the Reddit website, and through text messages and phone calls.  Compl., ¶¶ 52-55.  One of these employees, the Head of Customer Sales and Community Program Lead at Fella, communicates with customers on Reddit under the username "These_Advertising_18."  Compl., ¶ 53.

To provide examples of the provision of unlicensed medical advice by Fella, Eli Lilly offers screenshots of six online posts made in the sub-Reddit "r/FellaHealth."[2]  Compl., ¶¶ 56, 58, 59, 60, 61, 62.  On one occasion in February 2025, a Fella customer posted in r/FellaHealth: "Who do I need to speak to[?]"  Compl., ¶ 56.  That customer, who stated that he had previously been on "zepbound" until it grew too expensive, described the dosage of medicine delivered to him by Fella as too low and a "waste of my money."  *Id.*  In response, Cartwright responded: "Fella founder here.  We got you – we'll just escalate your titration speed to ensure no wasted time.  You can text Stanley directly on [personal phone number].  We're always here."  *Id.*  Eli Lilly alleges that "[t]his is far from an isolated incident," as "Cartwright frequently tells customers that he can help increase their dosage amounts of Fella's knockoff drugs if they contact him or his non-physician customer success team directly."  Compl., ¶ 58.

On another occasion in January 2025, Cartwright responded to a Fella customer who had posted in the r/FellaHealth sub-Reddit that he was not experiencing "any hunger suppression" despite "4.5 mo on Tirzepatide."  Compl., ¶ 58.  Cartwright wrote that he was Fella's founder and that if the customer texted Cartwright at his personal number, he would escalate the concern to his team to "[i]ncrease the speed of your titration," "[m]ake sure you're having coaching with one of our health coaches," and "[e]xtend your membership on us."  *Id.*

---

[2] A "sub-Reddit" is a page on the Reddit website dedicated to a particular topic.

United States District Court
Northern District of California

Fella's founder was not the only unlicensed Fella employee alleged to have offered medical advice to Fella customers. Compl., ¶ 60. Eli Lilly alleges that in December 2024, one of Fella's customer success leads provided medical advice about proper dosing and instructed in a Reddit response to a customer that "if you have a [*sic*] average weight that you want to lose per week/month based on your tracking, then I would suggest increasing your dose when you go below that." *Id.* Also in December 2024, Fella's Head of Customer Sales and Community and Program Lead responded to a customer with instructions on how to adjust a patient's dosage, writing: "Having coached hundreds of fellas in your position, I've seen tapering down slowly (month-by-month) yield the best results regarding sustainability. If you're OK with it, the best hedge to prevent regain is staying on a maintenance plan indefinitely (which is what [another user] was alluding to: 5mg tirzepatide/.5mg semaglutide every 2 weeks). . . . If you want to discuss a gameplan privately for your remaining 6 weeks/tapering down, shoot me a text, I'll be back in on Monday: [personal number]." Compl., ¶ 61.

Eli Lilly also alleges that Fella changed patient prescriptions "en masse," unilaterally requiring its patients to change their prescriptions based on Fella's business needs, rather than individualized patient needs, again in violation of the Medical Practice Act. Compl., ¶ 64 (citing Cal. Bus. & Prof. Code § 2242). Eli Lilly alleges that in November 2024, Fella switched patients' prescriptions from compounded tirzepatide without any additives to a formulation of tirzepatide with additives (either l-arginine or glycine). Compl., ¶ 65. Soon after, Fella switched its patients back to tirzepatide without additives. *Id.* Eli Lilly alleges that these prescription changes were not made based on any individual patient's clinical need, as many patients learned that their prescription now contained an additive "not through their doctor but rather when their prescription arrived from Fella Health." Compl., ¶ 66. As one patient posted in the r/FellaHealth sub-Reddit, in or around November 2024: "I just received my refill for this month and it has L-Arginine added to it. Did I miss something and this was discussed because I didn't get anything telling me about it." *Id.* Another patient confirmed in the sub-Reddit that an additive had been added without his approval, writing: "I can't find anything letting me know ahead of time that this was happening." Compl., ¶ 68. Yet another wrote after experiencing side effects from the addition of

4

L-Arginine: "But, how about a god damn heads-up about the other ingredient!" Compl., ¶ 69.

In April 2025, Fella made a similar "en masse" prescription change to switch patients from compounded tirzepatide to a modified formula containing glycine. Compl., ¶ 70. Again, many patients were surprised and did not learn of the change through their doctor, but instead only when they received their prescription. Compl., ¶ 71. As Cartwright admitted in response to a concerned customer on Reddit who "wish[ed] Fella would communicate better in advance": "Fella founder here. Agree with you on the sh*t communication – that's on us." *Id.* According to Eli Lilly, these mass prescription changes were not based on medical reasons, but were instead driven by Fella's financial interests and corporate influence on prescribing decisions. Compl., ¶ 74. Eli Lilly points to a Reddit post by Fella's Head of Customer Sales explaining that the addition of glycine to the formulation "therefore differs from what's commercially available, meaning it constitutes a personalized prescription." Compl., ¶ 74. According to Eli Lilly, however, these are not "personalized prescriptions"—rather, Fella is offering "an untested, unapproved, one-size-fits-all drug" to patients without complying with the Medical Practice Act's requirement that prescriptions be made with "an appropriate prior examination and a medical indication." Compl., ¶¶ 75, 77; *see also* Bus. & Prof. Code § 2242.

### ii. Eli Lilly Alleges that Fella Engages in Unfair and Deceptive Conduct to Sell and Market Its Tirzepatide-Containing Products.

Eli Lilly alleges that on Fella's Fella Health website, it markets oral tirzepatide as "a GLP-1 medication that helps regulate appetite and support weight management. Taken as daily pills, it offers a convenient option for those looking to reach their weight loss goals." Compl., ¶ 81. A screenshot of the webpage reflects statements by Fella that "[o]ral tirzepatide helps regulate blood sugar levels" and that "[f]ellas using oral tirzepatide typically lose weight without the hassle of injections." Compl., ¶ 81. Another screenshot reflects this statement: "Our science-backed methodology delivers results that outperform traditional weight loss methods." Compl., ¶ 83. Similarly, Fella's Delilah website also markets oral tirzepatide. Compl., ¶ 84. A screenshot of the webpage for oral tirzepatide reflects Fella's representation, under its statement that "[t]irzepatide is the most innovative GLP-1 medication proven to dramatically curb appetite, hunger, and

United States District Court
Northern District of California

United States District Court
Northern District of California

cravings," that "[o]ral tirzepatide is the same active ingredient as the compounded injectable (tirzepatide)." *Id.* That product page also states that "[o]ur advanced oral Tirzepatide treatment, developed through cutting-edge research, offers a safe and effective solution tailored to support your weight loss journey and overall health." Compl., ¶ 86. On this page, oral tirzepatide is given the same "effectiveness" rating as injectable tirzepatide, which is "[h]igh." *Id.*

Eli Lilly alleges that Fella knew these statements regarding the effectiveness of oral tirzepatide were false, pointing a Reddit post from December 2024 where Fella's Head of Customer Sales wrote that "oral [tirzepatide] can be fairly ineffective (though not totally ineffective), and some may experience more GI discomfort due to daily administration." Compl., ¶ 90. In February 2025, one of Fella's customer success leads wrote that "[t]he oral version is less effective than the injectables, but it's still better than not being on the medication at all." Compl., 93. And in another Reddit post from March 2025, Fella's founder wrote that "oral [tirzepatide] is slightly less effective than subcutaneous." Compl., ¶ 91.

In at least one of these posts, Fella's Head of Customer Sales also insisted that the compounding pharmacies that provide Fella with oral tirzepatide "do rigorous, in-house testing on bioavailability and absorption to provide safe and efficacious medication." Compl., ¶ 92. Fella's website also states that oral tirzepatide is "science-backed" and that Fella uses a "science-backed methodology." Compl., ¶ 97. In a March 2025 Reddit post, Fella's Head of Customer Sales wrote that patients generally lose 15% of their body weight in one year on oral tirzepatide. Compl., ¶ 97. Contrary to these assertions, however, Eli Lilly alleges that oral tirzepatide has never been studied in clinical trials and that Fella has no science at all supporting its oral product. Compl., ¶¶ 96-97. In fact, according to Eli Lilly, the statistic cited by Fella on its Delilah website, that patients using oral tirzepatide experience a weight loss average of "22.5%," is derived from *Eli Lilly's* clinical trial on *injectable* tirzepatide. Compl., ¶ 98. Eli Lilly's studies did not assess the effectiveness of any oral or compounded tirzepatide. *Id.*

Finally, Eli Lilly takes issue with Fella's promotion of its injectable tirzepatide as safe and effective, when no scientific proof or regulatory approval exists for Fella's injectable product, and the statistics cited by Fella are taken from Eli Lilly's clinical trials. Compl., ¶¶ 101-104. Eli Lilly

6

alleges that Fella is trading on Eli Lilly's brand, customer goodwill, and credibility by promising results that cannot be obtained from Fella's product, and asserts that if Fella's untested products prove ineffective or if consumers are harmed by taking them, those consumers "may draw unwarranted conclusions about the safety and effectiveness of Lilly's FDA-approved tirzepatide medicines." Compl., ¶¶ 102, 110.

Accordingly, Eli Lilly now brings five claims alleging: (1) corporate control of practice of medicine and prescription practices, in violation of the Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*, against all Defendants (Compl., ¶¶ 111-119); (2) unfair competition in violation of the UCL, against all Defendants (Compl., ¶¶ 120-127); (3) false advertising in violation of the False Advertising Law, Cal. Bus. & Prof. Code §§ 17500 *et seq.*, against Fella (Compl., ¶¶ 128-137); (4) false or misleading advertising and promotion in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B), against Fella (Compl., ¶¶ 138-147); and (5) civil conspiracy, against all Defendants (Compl., ¶¶ 148-152). Eli Lilly seeks injunctive relief, restitution, attorneys' fees as to its first three claims (Compl., ¶¶ 119, 127, 137), and along with those remedies, also seeks monetary damages as to its fourth and fifth claims (Compl., ¶¶ 147), 152.

## II.    LEGAL STANDARD

### A.    Dismissal Under Federal Rule of Civil Procedure 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A defendant may move to dismiss a complaint for failing to state a claim upon which relief can be granted under Rule 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). To survive a Rule 12(b)(6) motion, a plaintiff need only plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

7

In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quotation omitted).

Even if the court concludes that a 12(b)(6) motion should be granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (quotation omitted).

### B.      Dismissal Under Federal Rule of Civil Procedure 9(b)

Federal Rule of Civil Procedure 9(b) requires that "the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct ... so that they can defend against the charge and not just deny that they have done anything wrong." *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1195-96 (9th Cir. 2003). Thus, a plaintiff must allege the "who, what, when, where, and how" of each alleged misrepresentation. *Id.*

## III.    DISCUSSION

All Defendants move to dismiss Eli Lilly's complaint for two reasons: first, Eli Lilly lacks standing under the UCL and Lanham Act; and second, Eli Lilly's claims fail under Federal Rules of Procedure 12(b)(6) and 9(b).

### A.      Eli Lilly Has Standing Under the Lanham Act

Eli Lilly brought its Lanham Act claim solely against Defendant Fella, which argues that Eli Lilly does not have standing under the Lanham Act because Eli Lilly and Fella are not direct competitors, such that Eli Lilly must allege "something very close to a 1:1 relationship between [Eli Lilly's] lost sales and the sales diverted to a defendant." Mot. at 7. Fella argues that Eli Lilly failed to plead "a single lost sale as a result of Fella Health's alleged false advertising," particularly because "the parties operate primarily in different markets" (Mot. at 7-8); that Eli Lilly's attempt to plead harm to its reputation is "hypothetical and wholly speculative" (Mot. at 8-

United States District Court
Northern District of California

10); and that Lilly cannot rely on harm to Fella's customers to show standing (Mot. at 10).

The Court is not persuaded by Fella's arguments. Under *Lexmark In'tl., Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 (2014), which Fella cites, "a direct application of the zone-of-interests test and the proximate-cause requirement supplies the relevant limits on who may sue." First, to come within the "zone of interests in a suit for false advertising under [the Lanham Act], a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 131-32. Second, that plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception of consumers wrought by the defendant's advertising; and that that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 133-34.

Here, Eli Lilly's alleged injuries fall within the zone of interests protected by the Lanham Act. First, Eli Lilly has adequately alleged injury to a commercial interest in its reputation. Eli Lilly alleges that "Fella's unfair, deceptive, misleading, and false practices, including its false and misleading statements, cause irreparable harm to Lilly's brand and customer goodwill by promising results that consumers cannot obtain from Fella's product." Compl, ¶ 110.

Second, Eli Lilly has also adequately alleged injury to its commercial interest in sales. For example, a Reddit screenshot in Eli Lilly's Complaint reflects that one of Fella's customers said he "was on zepbound" until mid-November 2024, but "stopped" when the medicine became too expensive. Compl., ¶ 56. That customer then received his "first delivery" of Fella's medicine in February 2025. The Court rejects Fella's argument that Eli Lilly cannot allege commercial harm because the parties operate primarily in different markets. Fella does not dispute that, as alleged, Fella "markets and sells, among other products, compounded tirzepatide products." Mot. at 20. While Fella "does not manufacture the products it sells, but instead purchases product" from compounding pharmacies, Eli Lilly has adequately alleged that Fella sells those products to the same consumers who purchase Eli Lilly's medicines. Mot. at 21; Compl., ¶ 47 ("Fella is a telehealth corporation that sells weight loss drugs to consumers, including compounded tirzepatide."); Compl., ¶ 28 ("Today, Lilly manufactures, markets, and sells [weight loss medicines containing tirzepatide] throughout the United States, among other places.").

United States District Court
Northern District of California

United States District Court
Northern District of California

Eli Lilly has also adequately alleged both economic and reputational injury flowing directly from Fella's alleged deception of consumers through its advertising.  With respect to injury to its reputation, Eli Lilly alleges that "[w]hen consumers fail to achieve desired results from Fella's oral tirzepatide or injectable tirzepatide, consumers may conclude that tirzepatide is ineffective in general—an outcome made much more likely given Fella's reliance on Lilly's clinical studies."  Compl, ¶ 110.  Eli Lilly concludes:  "[I]f consumers are harmed using compounded tirzepatide products from Fella—where their dosage and formulation are subject to repeated changes based solely on Fella's business relationships and their dosage is arbitrarily changed without any clinical justification—consumers may even draw unwarranted conclusions about the safety and effectiveness of Lilly's FDA-approved tirzepatide medicines."  *Id.*  With respect to injury to its sales, Eli Lilly has alleged that "Fella engages in unfair competition when . . . it tells patients that injections are a 'hassle when it knows this isn't true—all to steer patients away from Lilly's tested, proven medicines."  Compl., ¶ 94.  And "when [a] plaintiff competes directly with defendant, a misrepresentation will give rise to a presumed commercial injury that is sufficient to establish standing."  *TrafficSchool.com, Inc. v. Edriver Inc.*, 653 F.3d 820, 827 (9th Cir. 2011).  In this way, Eli Lilly has alleged the "classic Lanham Act false-advertising claim in which one competitor directly injures another by making false statements about his own goods or the competitor's goods and thus inducing customers to switch."  *Lexmark Int'l.*, 572 U.S. at 137-78 (cleaned up).

### B.    Eli Lilly Has Standing Under the UCL and FAL

Eli Lilly brings its first two claims against all Defendants in violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 *et seq.*  Compl., ¶¶ 111-119, 120-127.  Eli Lilly's third claim alleges false advertising against Fella in violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500 *et seq.*, which is incorporated into the UCL.  Compl., ¶¶ 128-137.  Defendants argue that Eli Lilly lacks standing to bring these three claims because it "has not established an injury to a legally protected interest that is anything more than hypothetical or speculative," particularly because "injury to reputation alone, without accompanying loss of money or property, is not sufficient to confer standing under the UCL."

10

Mot. at 11-12. That is, Defendants argue that Eli Lilly has done "nothing to connect the dots as to how the alleged harm would lead to a loss of money or property." Mot. at 12.

To establish standing under the UCL (and FAL), a plaintiff must allege economic injury caused by "the unfair business practice or false advertising that is the gravamen of the claim." *Ivie v. Kraft Foods Glob., Inc.*, 961 F. Supp. 2d 1033, 1046 (N.D. Cal. 2013); *see also Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037, 1048 (9th Cir. 2017) ("The standing requirements under California's FAL and UCL and the federal Lanham Act are generally the same.").

Here, Eli Lilly has adequately alleged economic injury. *See supra* Section III.A (finding Eli Lilly sufficiently alleged injury to its commercial interest in sales). But Eli Lilly has sufficiently alleged that this economic injury is caused by Defendants' business practices only with respect to its FAL claim and *second* UCL claim, not the first UCL claim. *Compare* Compl., ¶¶ 111-19 (UCL claim based on corporate practice of medicine) *with id.*, 120-27 (UCL claim for unfair competition). Eli Lilly's first UCL claim has as its predicate the unlawful corporate practice of medicine, including: prescribing medications and modifying the formulation, dosage, and titration schedule of those medications, Cal. Bus. & Prof. Code § 2242; prescribing medications with additives and changing those additives, *id.*; prescribing untested oral and injectable medications; and issuing such prescriptions without a prior examination by a physician and without identification of a medical indication for the modification. Compl., ¶ 115. But Eli Lilly has not adequately alleged a causal connection between Defendants' alleged corporate practice of medicine and Eli Lilly's loss of money or property. Put another way, Eli Lilly does not plausibly allege how Defendants' claimed lack of authorization to practice in itself causes it any injury. And Eli Lilly has no freestanding legal basis to complain about injuries to *patients* purportedly stemming from Defendants' practices. *See Novo Nordisk A/S v. Aios Inc. d/b/a Fella Health*, No. 4:25-cv-06560, Dkt. No. 56, at *8 (N.D. Cal. Mar. 10, 2026).

Eli Lilly's second UCL claim has as its predicate a variety of deceptive practices, including: marketing and selling Defendants' tirzepatide medicines as safe and effective, supported by clinical studies, and FDA-approved; misleading consumers about the medical indication and necessity for changes in the formulation, dosage, and titration schedule of their

11

drugs; claiming that the tirzepatide medicines are "personalized"; and altering prescriptions and dosages for business purposes. Compl., ¶ 123. Eli Lilly has sufficiently alleged that these business practices caused it monetary harm, because these practices "lure consumers away from obtaining safe and effective treatment, such as Lilly's FDA-approved tirzepatide medicines," and "steer patients seeking weight loss treatments away from obtaining safe, effective, and FDA-approved treatments." Compl., ¶¶ 124, 132. For example, when Fella "tells patients that injections are a 'hassle,'" that statement arguably "steer[s] patients away from Lilly's tested, proven medicines." Compl., ¶ 94. Defendants argue that to show standing, Eli Lilly, as the plaintiff, must show its *own* "actual reliance on the allegedly deceptive or misleading statements." Mot. at 11. But the Court agrees that "there are doubtless many types of unfair business practices in which the concept of reliance . . . has no application," and that applying a "reliance requirement to competitor claims makes little sense because false advertising claims between competitors are fundamentally different from false advertising claims brought by consumers." *Scilex Pharms. Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-CV-01280-JST, 2021 WL 11593043, at *6 (N.D. Cal. Aug. 16, 2021).

Accordingly, Eli Lilly has standing to bring its FAL claim and UCL claim for unfair competition. Eli Lilly has not shown standing to bring its UCL claim based on the corporate practice of medicine. Because Eli Lilly has not shown standing to bring that claim, the Court need not consider whether it was adequately pled.

### C. Eli Lilly Adequately Pleads a Claim for False Advertising Under the Lanham Act and FAL

Eli Lilly brings its false advertising claims under the Lanham Act and FAL against Defendant Fella. Compl., ¶¶ 128-137, 138-147. Fella argues that Eli Lilly does not state a claim for false advertising because Eli Lilly does not plead false statements of fact, customer confusion, or harm to Eli Lilly based on the false advertising.

The Parties do not dispute that "[i]n the Ninth Circuit, claims of unfair competition and false advertising under [the FAL and UCL] are substantially congruent to claims made under the Lanham Act." Mot. at 16; Opp. at 24; *Cleary v. News Corp.*, 30 F.3d 1255, 1263 (9th Cir. 1994)

United States District Court
Northern District of California

(considering UCL and Lanham Act false-advertising claims together, as under both the UCL and Lanham Act, the "'ultimate test' is 'whether the public is likely to be deceived or confused by the similarity of the marks'"). Accordingly, the Court considers Eli Lilly's Lanham Act and FAL claims together. A false advertising claim under the Lanham Act requires showing: (1) a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products. *Skydive Arizona, Inc. v. Quattrochi*, 673 F.3d 1105, 1110 (9th Cir. 2012).

As an initial matter, Fella objects that the statements identified by Eli Lilly are not commercial speech at all, and so do not qualify as commercial advertising. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1114-15 (9th Cir. 2021) (to qualify as commercial advertising, a statement must be (1) commercial speech, (2) by the defendant who is in competition with the plaintiff, (3) for the purpose of influencing customers to buy defendant's goods, and (4) sufficiently disseminated to the relevant purchasing public).

Here, as discussed above, Fella is in competition with Eli Lilly, and the facts pled in the Complaint reasonably support an inference at this stage that the Reddit responses posted by Fella's founder and key employees, as well as the images and captions on the product webpages, were made for the purpose of influencing customers to buy Fella's products. Further, at this stage, the Court finds that the Reddit posts made online are sufficient to indicate that these responses were disseminated to the relevant purchasing public. *See Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 734-35 (9th Cir. 1999) ("[w]here the potential purchasers in the market are relatively limited in number, even a single promotional presentation to an individual purchaser may be enough to trigger the protections of the Act").

While the images and captions on the product webpages referring to "oral tirzepatide" and drawing a comparison to injectable tirzepatide are "commercial speech," whether the Reddit

United States District Court
Northern District of California

statements identified by Eli Lilly are "commercial speech" is a closer question. Notably, speech that does not propose a commercial transaction "on its face" can still be commercial speech. *Ariix, LLC*, 985 F.3d at 1115 (informational pamphlets were still commercial speech). "Where the facts present a close question, strong support that the speech should be characterized as commercial speech is found where [1] the speech is an advertisement, [2] the speech refers to a particular product, and [3] the speaker has an economic motivation." *Id.* at 1115-16; *see also Soon v. Garzon*, Case No. 23-cv-05189-HSG, 2026 WL 112046, at *3 (N.D. Cal. Jan. 15, 2026) (same); *Exeltis USA Inc. v. First Databank, Inc.*, 520 F. Supp. 3d 1225, 1230 (N.D. Cal. 2021) (same). Here, the Reddit responses tout Fella's success with statistics, refer to Fella's oral and injectable tirzepatide products, and adequately reflect an economic motivation, such that the allegations support a reasonable inference that "the economic benefit was the primary purpose for speaking." *Ariix,* 985 F.3d at 1117 (commercial speech can involve "indirect benefits," such as "improvements to a brand's image" and "general exposure of a product").

Whether Eli Lilly has alleged false statements of fact is a more straightforward question. Based on the screenshots of Fella's product webpages and Reddit posts made by Fella's founder and key employees, Eli Lilly asserts the falsity of at least twelve statements made by Fella regarding its tirzepatide products on either the product webpages or on Reddit:

*On oral tirzepatide product webpage for Fella Health:*

- "Fellas using oral tirzepatide typically lose weight without the hassle of injections" (Compl, ¶¶ 81-82)
- "We pair innovative GLP-1 weight loss medications with personalized treatment plans tailored to your unique biology and needs." (Compl., ¶ 83)
- "Our science-backed methodology delivers results that outperform traditional weight loss methods." (Compl., ¶ 83)

*On oral tirzepatide product webpage for Delilah:*

- "Our clients using tirzepatide typically lose up to 15% of their body weight (on average)." (Compl., ¶ 94)
- "Our clients using tirzepatide typically lose an average of 22.5% of their body weight." (Compl., ¶ 85)
- "Our advanced oral Tirzepatide treatment, developed through cutting-edge research, offers a safe and effective solution tailored to support your weight loss journey and overall health." (Compl., ¶ 86)

14

*On injectable tirzepatide product webpage for Fella Health:*

- Eli Lilly alleges that Fella presented its injectable tirzepatide as "the most effective GLP-1 medication" and "[h]ighly effective for blood glucose control and weight loss." (Compl., ¶ 105)
- Eli Lilly alleges that Fella presented its injectable tirzepatide as "the most innovative GLP-1 medication proven to dramatically curb appetite, hunger, and cravings to help busy men achieve substantial weight loss[.]" (Compl., ¶ 105)
- Eli Lilly alleges that Fella promoted its injectable tirzepatide with claims of "best-in-class weight loss," "superior blood sugar control," "curb[ing] appetite and cravings far greater than alternatives," and "[patients] typically losing an average of 22.5% of their body weight." (Compl., ¶ 105)
- Eli Lilly alleges that Fella claimed its injectable tirzepatide "delivers proven results that outperform traditional weight loss methods." (Compl., ¶ 106)

*On Reddit forum for Fella Health regarding oral tirzepatide:*

- "They [the compounding pharmacies] do rigorous, in-house testing on bioavailability and absorption to provide safe and efficacious medication[.]" (Compl., ¶ 92)
- Eli Lilly alleges that "Pellikan told consumers that patients experience approximately 15% weight loss in one year when using oral tirzepatide."[3] (Compl., ¶ 97)

Fella principally argues that "under the heightened Rule 9(b) pleading standard, a plaintiff may not sustain false advertising claims based solely on lack of substantiation grounds." Mot. at 18. Fella is correct that a private plaintiff may not state a claim by alleging that a defendant's statement lacked support, but must "particularly allege the falsity of the challenged statements." *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017) (explaining that "neither the UCL nor the CLRA provides [a plaintiff] with a private cause of action to enforce the substantiation provisions of California's unfair competition or consumer protection laws"); *see also Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW(KSX), 2019 WL 12435672, at *6 (C.D. Cal. Aug. 19, 2019)); *In re Chlorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1232 (N.D. Cal. 2012) ("Courts have been careful to distinguish between allegations that a defendant's advertising claims

---

[3] The text from the linked Reddit post provides: "The side effects of oral tirzepatide are usually less than injectable semaglutide, yes. Efficacy is also a bit lower: ~17% bw loss in 1 year on semaglutide vs ~15% bw loss in 1 year on oral tirzepatide." *See* Compl., ¶ 97 n.77 (citing Reddit, Oral Tirzepatide (Mar. 7, 2025), https://reddit.com/r/FellaHealth/comments/1j69ltp/oral_tirzepatide/ (last accessed Mar. 23, 2026)).

United States District Court
Northern District of California

are actually false and allegations that such claims lack substantiation."). In other words, Eli Lilly cannot simply assert that Fella lacks data to substantiate its claims about its products.[4]

Under the Lanham Act, to prove that an advertisement claim based on testing is literally false, a plaintiff "must demonstrate that such tests are not sufficiently reliable to permit one to conclude with reasonable certainty that they established the claim made." *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) (cleaned up). "A plaintiff may meet this burden either by attacking the validity of the defendant's tests directly or by showing that the defendant's tests are contradicted or unsupported by other scientific tests." *Id.* (citation omitted). "Moreover, if the plaintiff can show that the tests, even if reliable, do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden of demonstrating literal falsity." *Id.* (cleaned up). And even if an advertisement is not *literally* false, relief is available if the advertisement "misled, confused, or deceived the consuming public." *Id.* (citation omitted).

The Court finds that for nearly all of the allegedly false statements by Fella identified above, Plaintiff plainly claims they are "false" because they are not substantiated. For example, Eli Lilly asserts that Fella's statements regarding its patients typically losing 15-22.5% of their body weight are false because those statements are in reality based on the results of Eli Lilly's clinical trials, which were performed on injectable and non-compounded tirzepatide. Compl., ¶ 98. To be sure, a plaintiff may demonstrate that an advertisement based on testing is false by showing that even reliable tests do not establish the proposition asserted by the defendant. *Southland Sod Farms*, 108 F.3d at 1139. But here, Eli Lilly has not alleged that Fella made any representation regarding the specific basis for its statements about the weight loss results typically achieved for its patients, and Eli Lilly does not allege any *contrary* facts (as opposed to the

---

[4] Although cases interpreting the UCL and the CLRA have found that a private plaintiff may not bring a lack of substantiation theory under these statutes, the Ninth Circuit has not yet addressed whether this principle applies equally to the Lanham Act. Defendants cite persuasive district court authority interpreting the Lanham Act to bar lack of substantiation claims. *See* Mot. at 18-19; *see also Woodway USA, Inc. v. LifeCORE Fitness, LLC*, No. 24-cv-1936-AGS-AHG, 2025 WL 1490301, at *3 (S.D. Cal. May 23, 2025) (relying on district court cases in the Ninth Circuit and a Third Circuit case holding that "a Lanham Act plaintiff bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof"). In the absence of any binding authority establishing otherwise, the Court thus assumes that a lack of substantiation theory is also unavailable under the Lanham Act.

16

purported *lack* of supporting facts). *Kwan* is instructive. There, the defendant claimed that its product provided an increase in growth hormone levels, which was in turn associated with certain health benefits. *Kwan*, 854 F.3d at 1091. The plaintiff alleged that defendant "falsely implies that defendant's product claims were based on credible scientific proof." *Id.* at 1096-97. The Ninth Circuit held that plaintiff's allegation boiled down to "an allegation that defendant's marketing claims lack scientific substantiation." *Id.*

As another example, Eli Lilly asserts that Fella's statements regarding the pharmacies' performance of "cutting-edge research" and "rigorous, in-house testing" to produce oral tirzepatide are false because no research or testing was performed. As factual support for this argument, Eli Lilly claims that "[o]ral tirzepatide has never been studied in clinical trials," and that "[there are] no clinical studies assessing the effectiveness of oral tirzepatide." Compl., ¶¶ 96, 97. ("Oral tirzepatide has never been studied in clinical trials"); *id.*, ¶ 97 ("[there are] no clinical studies assessing the effectiveness of oral tirzepatide"). The Court again is not persuaded. Eli Lilly has not plausibly alleged that the "research" and "testing" statements are false just because oral tirzepatide has never been subject to the particular mechanism of a clinical trial or study.

Accordingly, the Court finds that only allegedly false statements sufficiently pled by Eli Lilly are those made in connection with Fella's promotion of "personalized treatment plans." *See, e.g.*, Compl., ¶ 83 ("We pair innovative GLP-1 weight loss medications with personalized treatment plans tailored to your unique biology and needs."). At this stage, where the Court is obligated to take the plaintiff's allegations as true, the Court finds that Eli Lilly has alleged at least some actionable false statements of fact. Accordingly, because these statements are "literally false" as alleged, actual deception of consumers can be presumed and the Court need not consider whether the public was otherwise confused or misled. *See Factory Direct Wholesale, LLC v. iTouchless Housewares & Products, Inc.*, 411 F. Supp. 3d 905, 924 (N.D. Cal. 2019). Further, the Court finds it plausible that these particular false statements are likely to be material deceptions that would influence purchasing decisions. *Skydive Arizona, Inc.*, 673 F.3d at 1110. Finally, at this stage, the Court finds that Eli Lilly has adequately alleged the diversion of sales and a lessening of goodwill flowing from Fella's alleged deceptive statements regarding its oral and

injectable compounded tirzepatide products. *See* Compl., ¶ 110. Fella itself points to numerous statements on its product webpages referring to "tirzepatide" in general, rather than to oral tirzepatide or compounded tirzepatide specifically. Mot. at 18.[5]

### D.   Eli Lilly Adequately Pleads a Claim for Fraudulent Business Acts or Practices Under the UCL

For the reasons outlined above, the Court finds that Eli Lilly has adequately pled that Fella engaged in conduct by which "members of the public are likely to be deceived," as judged by the effect on a "reasonable consumer." *Davis*, 691 F.3d at 1169. Defendants argue that a plaintiff must show that *it* (as opposed to consumers) actually relied on the deceptive or misleading statements, but as discussed above, applying a "reliance requirement to competitor claims makes little sense because false advertising claims between competitors are fundamentally different from false advertising claims brought by consumers." *Scilex Pharms. Inc.*, 2021 WL 11593043, at *6.

### E.   Eli Lilly's Civil Conspiracy Claim Need Not Be Based on a Tort

Eli Lilly alleges a civil conspiracy claim against all Defendants. Compl., ¶¶ 148-152. Defendants' only objection is that "to have a valid civil conspiracy cause of action, there must be another tort" upon which the conspiracy claim is based. Mot. at 25. But California law is clear: "It is sufficient that a conspiracy is based on an agreement to engage in unlawful conduct regardless of whether the conspiracy violates a duty imposed by tort law or a statute." *Rickley v. Goodfriend*, 212 Cal. App. 4th 1136, 1158 (2013).

## IV.   CONCLUSION

For these reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendants' motion to dismiss. Dkt. No. 58. Plaintiff has not adequately alleged standing to pursue its first claim for the corporate practice of medicine in violation of the UCL, but Plaintiff may proceed on

---

[5] Fella also argues that the challenged statements are inactionable opinions or puffery, but "[a] statement is factual if it is specific and measurable, . . . capable of being proved false or being reasonable interpreted as a statement of objective fact." *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F. 4th 986, 1001 (9th Cir. 2024). Thus, "a statement that is quantifiable, that makes a claim as to the specific or absolute characteristics of a product may be actionable under the Lanham Act." *Id.*; *cf. Southland Sod Farms*, 108 F.3d at 1145 ("[P]roduct superiority claims that are vague or highly subjective often amount to nonactionable puffery."). The Court finds that whether Defendants actually personalize customers' treatment is capable of being proven true or false.

United States District Court
Northern District of California

its UCL claim for unfair competition.  Plaintiff may also proceed on its claims for false advertising under the UCL and Lanham Act, but only to the extent that those claims are premised on the theory that Defendants' statements regarding a "personalized treatment plan" are false.  In addition, Plaintiff may proceed on its civil conspiracy claim.  Finally, exercising its discretion, the Court **GRANTS** Plaintiff's administrative motion for leave to file a sur-reply.  Dkt. No. 78.

Because the Court cannot find that further amendment necessarily would be futile, the Court grants leave to amend.  Any amended complaint is due within 21 days of the date of this order.  The Court **SETS** a case management conference in this case on May 5, 2026, at 2:00 p.m.  The hearing will be held by Public Zoom Webinar.  All counsel, members of the public, and media may access the webinar information at https://www.cand.uscourts.gov/hsg.  All attorneys and pro se litigants appearing for the case management conference are required to join at least 15 minutes before the hearing to check in with the courtroom deputy and test internet, video, and audio capabilities.  The Court **DIRECTS** the parties to meet and confer and file a joint case management statement by April 28, 2026.

**IT IS SO ORDERED.**

Dated:    3/26/2026

HAYWOOD S. GILLIAM, JR.
United States District Judge