KATY KOSKI (*pro hac vice*)
 kkoski@foley.com
LEA GULOTTA JAMES (*pro hac vice*)
 ljames@foley.com
**FOLEY & LARDNER LLP**
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Telephone: 617.342.4000
Facsimile: 617.342.4001

MICAH A. CHAVIN, CA Bar No. 313634
 micah.chavin@foley.com
**FOLEY & LARDNER LLP**
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Telephone: 415.434.4484
Facsimile: 415.434.4507

*Attorneys for Defendants AIOS, INC. d/b/a Fella*
*Health and Delilah, FELLA MEDICAL GROUP*
*P.A., and FELLA MEDICAL GROUP P.C.*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ELI LILLY AND COMPANY | Case No. 4:25-cv-03535-HSG |
| Plaintiff, | **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** |
| vs. | Date: July 16, 2026 |
| AIOS INC d/b/a FELLA HEALTH AND DELILAH, FELLA MEDICAL GROUP P.A., FELLA MEDICAL GROUP P.C., | Time: 2:00 p.m. |
| | Complaint Filed: April 23, 2025 |
| Defendants. | Hon. Judge Haywood S. Gilliam, Jr. |

## TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ...............................................................2

I.    INTRODUCTION ...................................................................................................2

II.   RELEVANT FACTUAL BACKGROUND.............................................................3

    A.    FELLA HEALTH IS A TELEHEALTH COMPANY ....................................3

    B.    FELLA MEDICAL GROUP P.A. AND FELLA MEDICAL GROUP P.C. .................3

    C.    DRUG COMPOUNDING .................................................................3

III.  ARGUMENT............................................................................................................5

    A.    LEGAL STANDARDS .................................................................5

    B.    THE COURT'S PRIOR DISMISSALS SHOULD NOT BE DISTURBED .................6

        1.    The FAC Does Not Allege Harm to Lilly Due to Supposed CPOM Violations .................................................................6

        2.    The Court Rejected the Safety and Efficacy Theory, and the FAC Does Not Revive It .................................................................7

        3.    Lilly Intentionally Altered Its Personalization Theory .................................10

    C.    LILLY'S THEORY OF HARM IS IMPROPERLY PREMISED ON LILLY'S BELIEF THAT COMPOUNDING SHOULD NOT EXIST.................................10

    D.    LILLY OTHERWISE FAILS TO STATE A CLAIM FOR FALSE ADVERTISING UNDER THE "SAFE AND EFFECTIVE," "SUPERIORITY," OR "FDA APPROVAL" THEORIES .................................................................13

        1.    The Statements Underlying the "Safe and Effective" and "Superiority" Theories Are Not Literally False.................................13

        2.    Lilly's "Superiority" Theory Amounts to Puffery .................................14

        3.    The "FDA Approval" Theory Does Not Present Any False Statement .................................................................14

        4.    Lilly Fails to Adequately Plead Implied Falsity Under Any Theory .................................................................15

    E.    THERE IS NO ACTIONABLE CIVIL CONSPIRACY CLAIM.................................16

# TABLE OF AUTHORITIES

Page(s)

Cases

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
  No. 17-cv-01551, 2019 WL 4545960 (C.D. Cal. Mar. 27, 2019).........................................................10

*Allergan USA, Inc. v. Prescribers Choice, Inc.*,
  364 F. Supp. 3d 1089 (2019) .........................................................................................................4

*Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*,
  7 Cal. 4th 503 (1994) ...................................................................................................................17

*ARE II Cases*,
  216 Cal. App. 4th 1004 (2013) .....................................................................................................16

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009).......................................................................................................................5

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007).......................................................................................................................5

*Caltex Plastics, Inc. v. Elkay Plastics Co., Inc.*,
  No. 12–cv–10033, 2015 WL 13283255 (C.D. Cal. Feb. 4, 2015)...................................................8

*Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*,
  911 F.2d 242 (9th Cir. 1990) .......................................................................................................14

*Daro v. Sup. Ct.*,
  151 Cal. App. 4th 1079 (2007) ......................................................................................................6

*Eli Lilly & Co. v. Adonis Health, Inc.*,
  No. 25-cv-03536-JST, 2025 WL 2721684 (N.D. Cal. Sept. 25, 2025) ...........................................8

*Eli Lilly & Co. v. Mochi Health Corp.*,
  No. 25-cv-03534-JSC, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025) ............................................8

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
  No. 25-cv-03570-AB-MAR, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025)...............................8, 10

*Eli Lilly & Co. v. Willow Health Servs., Inc.*,
  No. 25-cv-03570-AB-MAR, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026)..........................................8

*Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*,
  184 Cal. App. 4th 313 (2010) ......................................................................................................15

*Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*,
  299 F.3d 1242 (11th Cir. 2002) .....................................................................................................9

*Kidron v. Movie Acquisition Corp.*,
  40 Cal. App. 4th 1571 (1995) ............................................................................................. 17

*Knowles v. Arris Int'l PLC*,
  No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019)............................. 14

*Kurin, Inc. v. ICU Med., Inc.*,
  No. 24-CV-00564-FWS-ADS, 2024 WL 54166772 (C.D. Cal. Nov. 8, 2024)...................... 7

*Kwan v. SanMedica Int'l*,
  854 F.3d 1088 (9th Cir. 2017) ............................................................................................... 7

*Marshall v. PH Beauty Labs, Inc.*,
  2015 WL 3407906 (C.D. Cal. May 27, 2015) ..................................................................... 8, 9

*Matthews v. Apple, Inc.*,
  769 F. Supp. 3d 999 (N.D. Cal. 2024) ................................................................................. 16

*Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*,
  107 Cal. App. 4th 1336 (2003) .......................................................................................... 7, 9

*Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*,
  48 F.4th 1040 (9th Cir. 2022) ............................................................................... 3, 4, 11, 12

*Oracle Int'l Corp. v. Rimini St., Inc.*,
  123 F.4th 986 (9th Cir. 2024) ............................................................................................. 14

*Osmose, Inc. v. Viance, LLC*,
  612 F.3d 1298 (11th Cir. 2010) ............................................................................................ 9

*Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC*,
  No. 21-cv-01280, 2022 WL 20286688 (N.D.C.A. February 24, 2022).................................. 13, 14, 15

*Skydive Ariz., Inc. v. Quattrocchi*,
  673 F.3d 1105 (9th Cir. 2012) ............................................................................................. 13

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1124 (9th Cir. 1997) ............................................................................................... 9

*Southland Sod Farms v. Stover Seed Co.*,
  108 F.3d 1134 (9th Cir. 1997) ............................................................................... 13, 14, 15

*Spencer v. Mowat*,
  46 Cal. App. 5th 372 (2020) ............................................................................................... 16

*Strategic Partners, Inc. v. FIGS, Inc.*,
  No. CV 19-2286-GW(KSX), 2019 WL 12435672 (C.D. Cal. Aug. 19, 2019) ...................... 7

*ThermoLife Int'l, LLC v. BPI Sports, LLC*,
  No. 21-15339, 2022 WL 612669 (9th Cir. Mar. 2, 2022)..................................................... 12

*Thompson v. W. States Med. Ctr.*,
535 U.S. 357 (2002) ............................................................................................................ 4

*United Bhd. Of Carpenters & Joiners of Am. v. Building & Cont'l Trade Dep't*,
770 F.3d 834 (9th Cir. 2014) ............................................................................................ 17

*Woodway USA, Inc. v. LifeCORE Fitness, LLC*,
No. 24-cv-1936-AGS-AHG, 2025 WL 1490301 (S.D. Cal. May 23, 2025) ....................... 7

Statutes

21 U.S.C. § 353a(b)(1)(A)(i)(II) ............................................................................................. 4

21 U.S.C. § 353a(b)(1)(D) ...................................................................................................... 4

21 U.S.C. §§ 353a(a), 353b(a) ......................................................................................... 3, 10

21 U.S.C. §§ 353a(d)(2)(A-B) ................................................................................................ 5

Rules

Fed. R. Civ. P. 8(a)(2) ............................................................................................................. 5

Fed. R. Civ. P. 9(b) ................................................................................................................. 6

Fed. R. Civ. P. 12(b)(6) ...................................................................................................... 1, 5

**TO THE COURT, ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that on July 16, 2026 at 2:00 PM or as soon thereafter as this matter may be heard before the Honorable Haywood S. Gilliam, Jr. of the above-captioned Court, located at Courtroom 2 – 4th Floor, 1301 Clay Street, Oakland, CA 94612, Defendants Aios Inc. d/b/a Fella Health and Delilah ("Fella Health"), Fella Medical Group P.A. ("Fella Medical Florida"), and Fella Medical Group P.C. ("Fella Medical California") (collectively, "Defendants") hereby move this Court for an order dismissing all causes of action alleged in Plaintiff Eli Lilly and Company's ("Lilly") First Amended Complaint ("FAC") with prejudice.

The Motion to Dismiss is made pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b). The grounds for the Motion to Dismiss are that Lilly lacks standing to pursue its claims under the Lanham Act and under California's Unfair Competition Law. Further, Lilly fails to state a claim for relief. Accordingly, Defendants request the Court dismiss the complaint with prejudice.

Defendants' Motion to Dismiss is based on this Notice, the accompanying Memorandum of Points and Authorities, the files and records in this case, and any further written or oral argument as permitted to be presented at the hearing.

DATED: May 18, 2026

FOLEY & LARDNER LLP
KATY KOSKI
LEA GULOTTA JAMES
MICAH A. CHAVIN

/s/ Micah A. Chavin
Micah A. Chavin

Micah A. Chavin (CA Bar No. 313634)
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel: (415) 438-6469
micah.chavin@foley.com

Katy Koski (admitted pro hac vice)
Lea Gulotta James (admitted pro hac vice)
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Tel.: (617)794-8014
kkoski@foley.com
ljames@foley.com

Attorneys for Aios Inc. d/b/a Fella Health and Delilah, Fella Medical Group P.A., and Fella Medical Group P.C.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Lilly's FAC—although dressed up with additional conclusory allegations and supposedly false advertisements—fares no better than Lilly's original Complaint and its failure to appropriately address the federal statutory framework governing the compounding of prescription medications calls all its pleading into question. The FAC makes plain that Lilly is asking this Court to stamp out compounded medications altogether under the guise of state and federal causes of action. Lilly reasserts claims for corporate practice of medicine ("CPOM") and unfair competition pursuant to the California Unfair Competition Law ("UCL"); false advertising under the California False Advertising Law ("FAL") and the Lanham Act; and civil conspiracy. In considering Defendants' motion to dismiss[1], the Court held that Lilly did not have standing to assert its UCL/CPOM claim as it did not adequately plead harm. *See* ECF No. 88 ("MTD Order") at 10. It also dismissed the UCL unfair competition, FAL, and Lanham Act claims to the extent they were premised on alleged false advertisements related to the "safety and efficacy" of compounded tirzepatide products. *See id.* at 17-18.

The FAC does not cure these deficiencies. With respect to the UCL/CPOM claim, both the FAC and the original Complaint fail to demonstrate how ***Lilly*** (rather than patients or consumers) is harmed by the supposed non-physician control over prescribing decisions. In short, "Lilly does not adequately allege a causal connection" between its conclusory assertion of harm (i.e. "lost sales") and the alleged CPOM conduct. The Court's ruling that Lilly does not have standing to bring its UCL/CPOM claim should not be disturbed.

As to Lilly's false advertising claims premised on the so-called "safety and efficacy" theory, the FAC does not substantially change the allegations, but instead improperly asserts legal argument (including by citing to case law) in an effort to create ambiguity in the challenged advertisements that do not exist. Thus, Lilly contends Fella Health's marketing claims relating to the safety and efficacy of compounded tirzepatide are not, as the Court found, non-actionable lack of substantiation claims, but are

---

[1] Defendants do not intend to repeat arguments the Court considered and rejected in ruling on the original motion to dismiss, but reserve all rights with respect to the deficiencies in the FAC. To the extent the Court did not address certain arguments, Defendants incorporate by reference their original motion (ECF No. 58).

instead "establishment" claims. Not so. The advertisements Lilly cites are either identical to, or contain the same language as, the statements the Court analyzed and rejected in the Order.

The FAC also fails to state a claim for false advertising based a number of enumerated theories. With respect to these statements, Lilly does not identify a single false statement. Finally, Lilly's civil conspiracy claim fails with the underlying claims which support it.

## II.    RELEVANT FACTUAL BACKGROUND

### A.    Fella Health Is a Telehealth Company

Fella Health is a telehealth company that acts as a management services organization ("MSO") offering administrative services, technological infrastructure, and support to a network of licensed medical providers. FAC ¶¶ 16, 107. In its MSO role, Fella Health contracts with providers for access to its proprietary telehealth platform, facilitating the virtual care that the providers independently provide to patients. Fella Health manages a website on behalf of itself and associated providers, which informs prospective patients of the providers' services and identifies certain drugs that they may prescribe, including but not limited to compounded tirzepatide.

### B.    Fella Medical Group P.A. and Fella Medical Group P.C.

Fella Medical Group P.A. ("Fella Medical Florida") is a Florida professional corporation and Fella Medical Group P.C. ("Fella Medical California") is a California professional corporation. These entities engage in the practice of medicine under Florida and California law, respectively. Both Fella Medical Florida and Fella Medical California are responsible for providing healthcare services to patients, including diagnosis, treatment, and prescribing. FAC ¶ 48 n.33. These services are all carried out by doctors and other healthcare professionals licensed by the States in which they practice.

### C.    Drug Compounding

Contrary to Lilly's efforts to demonize compounded medications, compounding is a legitimate, longstanding component of pharmacy practice. *See Nexus Pharms., Inc. v. Central Admixture Pharm. Servs., Inc.*, 48 F.4th 1040, 1042 (9th Cir. 2022) (affirming dismissal of claims challenging defendant compounding pharmacy's actions on grounds of implied federal preemption and the prohibition on private enforcement of the FDCA). Compounding facilities are regulated by Sections 503A and 503B of the FDCA. *See* 21 U.S.C. §§ 353a(a), 353b(a). Section 503A purposely exempts compounded medications

from FDA's new drug approval process because "[r]equiring FDA approval of all [compounded] drug products . . . would, as a practical matter, eliminate the practice of compounding." *Thompson v. W. States Med. Ctr.*, 535 U.S. 357, 360-361 (2002); *see also Nexus Pharms.*, 48 F.4th at 1042 ("Congress does not subject compounded drugs to the approval process it uses for new drugs because valid compounding has traditionally been seen as an appropriate means of customizing existing drugs to the needs of individual patients.").

Section 503A includes parameters to ensure that compounded medications remain a safe option for personalized patient care. *See* 21 U.S.C. § 353a(b)(1)(A)(i)(II). The FDCA authorizes compounders to use an active pharmaceutical ingredient ("API") that is a component of an approved drug—such as the tirzepatide in Lilly's drugs. *See id.* In fact, as it relates to GLP-1 APIs, FDA established a "green list" specifically identifying foreign manufacturer "facilities the agency has inspected or evaluated that appear to be in compliance with the FDA's rigorous standards—standards applicable to all APIs manufactured in the US."[2]

Both Section 503A and 503B typically prohibit compounding drugs that are "essentially copies of a commercially available drug product." 21 U.S.C. § 353a(b)(1)(D); *see also id.* § 353b. However, under certain circumstances, such as where a drug is placed on the official shortage list by FDA, this prohibition is lifted, as such drugs are no longer considered "commercially available." *See, e.g.*, *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089, 1104 (2019); U.S. FOOD & DRUG ADMIN., COMPOUNDED DRUG PRODUCTS THAT ARE ESSENTIALLY COPIES OF A COMMERCIALLY AVAILABLE DRUG PRODUCT UNDER SECTION 503A OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT: GUIDANCE FOR INDUSTRY (January 2018) ("We do not consider a drug product to be commercially available if . . . the drug product appears on the FDA drug shortage list[.]" Section 503A also authorizes compounders to make variations on commercially available drugs to meet patient need. *See id.* § 353a(b)(1)(D), (b)(2). Congress requires that compounded medications be compounded based on patient-specific prescriptions or prescription history; it does not require however, as Lilly suggests, that no two patients can receive the same prescription. *See id.* § 353a(a).

---

[2] *See* FAC ¶ 46 n. 19 (citing FDA, *FDA Launches Green List to Protect Americans from Illegal Imported GLP-1 Drug Ingredients* (Sept. 5, 2025), https://www.fda.gov/news-events/press-announcements/fda-launches-green-list-protect-americans-illegal-imported-glp-1-drug-ingredients).

Beginning in December 2022, Lilly was unable to adequately supply patients with its tirzepatide products. The FDA declared an official shortage, and while that shortage was in effect, compounding pharmacies were permitted to make and supply patients with compounded medications that were essentially copies of Lilly's tirzepatide medicines. *See* U.S. Food and Drug Admin., *Compounding when Drugs are on FDA's Drug Shortages List*, FDA.GOV (last updated December 18, 2024), https://www.fda.gov/drugs/human-drug-compounding/compounding-when-drugs-are-fdas-drug-shortages-list; U.S. Food and Drug Admin., *FDA clarifies policies for compounders as national GLP-1 supply begins to stabilize*, FDA.GOV (last updated April 28, 2024), https://www.fda.gov/drugs/drug-safety-and-availability/fda-clarifies-policies-compounders-national-glp-1-supply-begins-stabilize. FDA declared the shortage resolved on December 19, 2024, and granted compounding pharmacies a "grace period" through March 19, 2025 to transition from compounding copies. U.S. Food and Drug Admin., *Declaratory Order: Resolution of Shortages of Tirzepatide Injection Products (Mounjaro and Zepbound)* (December 19, 2024), https://www.fda.gov/media/184606/download?attachment. During this shortage period, medical providers prescribed (and Fella Health and other telehealth platforms advertised and facilitated access to) compounded tirzepatide medications that were essentially copies of Lilly's FDA approved products, and likewise prescribed, where needed by a specific patient, compounded tirzepatide which had a change that produces for an individual patient a clinical difference between the compounded drug and the comparable approved drug. 21 U.S.C. §§ 353a(d)(2)(A-B). Both the essential copies and other compounded products were purchased from federal and/or state regulated pharmacies. Once the shortage (with grace period) ended, essential copies were no longer authorized, but compounding continued in accordance with the FDCA.

## III.   ARGUMENT

### A.   Legal Standards

To state a claim upon which relief can be granted, a complaint must contain a "short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To survive a motion to dismiss for failure to state a claim, the complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face. Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Further, Lilly's claims are based

on allegations of fraudulent, misleading, or deceptive actions and statements made by Fella Health in advertising compounded tirzepatide products for weight management. Fed. R. Civ. P. 9(b) requires a pleading party "alleging fraud" to "state with particularity the circumstances constituting fraud."

**B.      The Court's Prior Dismissals Should Not Be Disturbed**

1.      The FAC Does Not Allege Harm to Lilly Due to Supposed CPOM Violations

As the Court previously held, Lilly lacks standing to assert a claim under the UCL premised on its corporate practice of medicine theory. MTD Order at 11. Lilly alleges that Fella Health, Fella Medical Florida, and Fella Medical California violated the "unlawful" prong of the UCL by engaging in the unlicensed practice of medicine in violation of the California MPA.[3] "When a UCL action is based on an unlawful business practice . . . there must be a causal connection between the harm suffered and the unlawful business activity." *Daro v. Sup. Ct.*, 151 Cal. App. 4th 1079, 1099 (2007). Lilly bases this claim on allegations that Defendants modified the formulation, dosage, and titration schedule of medications without prior examination or medical indication for the modification; prescribed medications with additives and changed those additives without prior examination or medical indication for the modification; and prescribed untested oral and injectable medications. *Compare* Complaint ¶ 115 *with* FAC ¶ 168. In analyzing these allegations in the original Complaint, the Court properly held that Lilly did not adequately plead "a causal connection between Defendants' alleged corporate practice of medicine and [Lilly's] loss of money or property." *See* MTD Order at 11. Specifically, the Court noted that Lilly did not "plausibly allege how Defendants' claimed lack of authorization to practice in itself causes any injury." *See id.*

Lilly continues in the FAC to rely on conclusory allegations of "lost sales" without any plausible allegations of a causal connection between the supposed CPOM violations and these lost sales. FAC ¶ 13. For example, Lilly does not allege (because it cannot) even a single example of a medical provider foregoing her medical judgment in writing what amounts to an unlawful prescription made at the direction

---

[3] Fella Medical Florida is a Florida professional corporation. Unlike California, Florida does not prohibit corporate practice of medicine, and in fact the Florida Board of Medicine has explicitly confirmed that "Florida statutes [do not] prohibit a Florida licensed physician employed by a corporation from practicing in Florida under such an arrangement." State of Florida Board of Medicine, *Final Order In re: Petition for Declaratory Statement*, (filed Sept. 16, 2003), *available at* https://www.floridahealth.gov/licensing-andregulation/declaratory/_documents/medical/doh-03-1018.pdf.

of a non-licensed individual (or otherwise for that matter). i.e. writing prescriptions for a compounded medication where a commercially available drug product was the appropriate course of treatment. The FAC does not cure the deficiencies identified by the Court and the claim should be dismissed.

          2.     <u>The Court Rejected the Safety and Efficacy Theory, and the FAC Does Not Revive It</u>

Lilly's false advertising claims under the UCL, FAL, and Lanham Act are premised on statements which Lilly segregates into four categories. One of these theories is that Fella Health[4] falsely claims that the compounded oral and injectable tirzepatide products it sells are safe and effective, as supported by science.[5] FAC at Sec. V.A. In considering the false advertising allegations, the Court previously analyzed twelve different allegedly false statements identified in the original Complaint. *See* MTD Order at 14-15 (citing Complaint ¶¶ 81-83, 85-86, 92, 94, 97 105-06). As to all but one of those advertisements, the Court held that Lilly failed to adequately allege that the advertisements were false under both the Lanham Act and UCL false advertising claims because "a private plaintiff may not state a claim by alleging that a defendant's statement lacked support but must 'particularly allege the falsity of the challenged statements.'" *See* MTD Order at 15 (quoting *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1096 (9th Cir. 2017); *see also Kurin, Inc. v. ICU Med., Inc.*, No. 8:24-CV-00564-FWS-ADS, 2024 WL 54166772 (C.D. Cal. Nov. 8, 2024) (quoting *Strategic Partners, Inc. v. FIGS, Inc.*, No. CV 19-2286-GW(KSX), 2019 WL 12435672, *6 (C.D. Cal. Aug. 19, 2019)) (internal quotations omitted); *Nat'l Council Against Health Fraud, Inc. v. King Bio Pharms., Inc.*, 107 Cal. App. 4th 1336, 1345 (2003) (under California law, private plaintiffs cannot demand substantiation for advertising claims).[6] In other words, plaintiffs cannot state a

---

[4] Although the FAC asserts the UCL unfair competition claim against all Defendants, it is devoid of allegations regarding Fella Medical California or Fella Medical Florida's participation in any supposedly false advertising. In the absence of such allegations, the FAC fails to put these provider entities on notice of the claims against them. To the extent the claim is premised on false advertising, it must be dismissed as to the Fella Medical defendants.

[5] The prior Complaint only identified two categories of false advertising—safety and efficacy, and personalization—and therefore the Court's prior order only addresses those categories. The new theories—marketing representing FDA approval and superiority to Lilly's products—do not actually present new statements not previously included in the Complaint. Lilly merely attempts to emphasize these statements by placing them into their own sections in the FAC. Many of the so-called "superiority" claims also implicate the safety and efficacy of compounded medications, and have already been analyzed by the Court. Additionally, these theories will be addressed in more detail herein.

[6] The same principle applies under the Lanham Act. *See, e.g.*, *Woodway USA, Inc. v. LifeCORE Fitness,*

claim for false advertising where, as here, the allegations rest on so-called "lack of substantiation" of the claims made in the challenged statements. Other Courts that have considered nearly-identical complaints brought by Lilly in this Circuit have come to the same conclusion. *See, e.g.*, *Eli Lilly & Co. v. Adonis Health, Inc.*, Case No. 25-cv-03536-JST, 2025 WL 2721684 (N.D. Cal. Sept. 25, 2025); *Eli Lilly & Co. v. Mochi Health Corp.*, Case No. 25-cv-03534-JSC, 2025 WL 2998166 (N.D. Cal. Oct. 24, 2025); *Eli Lilly & Co. v. Willow Health Servs., Inc.*, Case No. 2:25-cv-03570-AB-MAR, 2025 WL 2631620 (C.D. Cal. Aug. 29, 2025) (dismissing initial complaint) ("*Willow Health I*"); *Eli Lilly & Co. v. Willow Health Servs., Inc.*, Case No. 2:25-cv-03570-AB-MAR, 2026 WL 639976 (C.D. Cal. Feb. 3, 2026) (dismissing amended complaint).

Instead of addressing the noted deficiencies, Lilly instead repleads the same marketing statements the Court already considered and rejected as non-actionable. Even where the FAC adds allegations, it merely provides additional advertisements using the same supposedly objectionable language. *Compare, e.g.*, Compl. ¶¶ 81-83, 85-86, 92, 94, 97 105-06 *with* FAC ¶¶ 108-09, 113, 123-27, 135-38, 144. Lilly provides the Court with no grounds to abandon its prior determination that these statements are not actionable.

To get around the Court's prior ruling, Lilly argues (including by improperly citing case law in the FAC) that the same statements are nonetheless actionable as so-called "establishment" claims. This attempt is unavailing. As an initial matter, it is only the Lanham Act, and not the UCL, that distinguishes between "establishment" and "lack of substantiation." "California courts [applying the UCL] have not . . . adopted the Lanham Act's distinction between establishment and non-establishment claims." *Marshall v. PH Beauty Labs, Inc.*, 2015 WL 3407906, at *4 (C.D. Cal. May 27, 2015). Thus, the Court's ruling as to the "safety and efficacy" theory of false advertising under any UCL claim (*i.e.* the Second and Third Causes of Action) should not be impacted by Lilly's attempt to recast the same advertisements in a different light.

*LLC*, No. 24-cv-1936-AGS-AHG, 2025 WL 1490301, at *3 (S.D. Cal. May 23, 2025) (relying on district court cases in the Ninth Circuit and Third Circuit holding that "a Lanham Act plaintiff bears the burden of showing that a challenged advertisement is false or misleading, not merely that it is unsubstantiated by acceptable tests or other proof"); *Caltex Plastics, Inc. v. Elkay Plastics Co., Inc.*, Case No. 12–cv–10033, 2015 WL 13283255, at *5-6 (C.D. Cal. Feb. 4, 2015) ("[A] false advertising claim [under the Lanham Act] cannot be proved on 'lack of substantiation' grounds.").

Further, even under the Lanham Act's framework, it is clear that the statements Lilly identifies in the FAC are not establishment claims. Where a challenged statement represents, either through express language or clear implication, that a particular level of scientific support establishes the truth of the advertising claim, a plaintiff may be found to have adequately pled the falsity element under the Lanham Act. *See, e.g.*, *King Bio*, 107 Cal. App. 4th at 1349 (discussing the FTC Act and later applying the same framework to the Lanham Act). None of the challenged statements fit this theory.

In the FAC, Lilly cites caselaw in support of its contention that Fella Health's advertising falls into the category of "establishment" claims, but those cases merely highlight the difference between the allegedly false "safety and efficacy" statements the Court rejected (and those nearly identical statements added in the FAC) and an establishment claim. *See, e.g.*, *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1124, 1137 (9th Cir. 1997) (advertisements at issue claimed the product "tested best" in an "independent comparison test" and required "50% less mowing" based on "tests conducted by our research farm"); *Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc.*, 299 F.3d 1242, 1246 (11th Cir. 2002) (letter to consumers cited a study claiming patients concluded their contact lens was more comfortable than a competitor's lens); *Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1309-10 (11th Cir. 2010) (defendant admittedly conducted testing on its competitor's product and used the results of that testing in its advertisements, which contained statements like "[t]hese findings provide evidence that…", "[t]hese decay findings raise serious concerns…", and "[o]ur findings show"). Unlike these cases, the FAC points to no statement where Fella Health expressly or implicitly refers to testing conducted on its products, or indeed makes "any representation regarding the specific basis for its statements[.]" *See* MTD Order at 16. Lilly cannot transform Fella Health's advertising into an establishment claim "simply by adding magic words tethering the claims to an advertiser's particular substantiation[.]" *See Marshall*, 2015 WL 3407906 at *4 (claims relating to adequacy of clinical testing were substantiation claims that must be dismissed). None of the challenged advertisements contain references to, much less explicit citations to testing, scientific studies, or the like.

For these reasons, and as the Court previously held, all claims that rest on advertisements asserting safety and efficacy of compounded tirzepatide—including the Lanham Act claim, the FAL claim, and the UCL unfair competition claim to the extent it relies on alleged false advertising—should be dismissed.

3.      Lilly Intentionally Altered Its Personalization Theory

In the FAC, Lilly added a new section, consisting of a single paragraph, regarding the "personalization" theory of false advertising. *See* FAC ¶ 155. This paragraph serves to focus its personalization theory on two newly-pled alleged false advertisements: that Fella "write[s] personalized prescriptions for [its] existing compounded injectable tirzepatide patients," and that it is "offering personalized tirzepatide prescriptions." *See id.* These are not the same as the single statement the Court previously found properly stated a claim, and the Court may revisit its analysis of the personalization theory. *See* MTD Order at 17 (citing Compl. ¶ 83).

There is nothing false about the statements Lilly complains of. By virtue of the regulatory scheme, outside of the shortage/essential copy exception, compounded medications are *per se* personalized, as they require a prescribing practitioner make a finding that a compounded product is necessary for that particular patient. *See* 21 U.S.C. § 353a(a); *Willow Health I*, 2025 WL 2631620, at *10. Further, personalization does not, as Lilly insinuates, mean that every compounded medication must be different for every patient. It is perfectly acceptable for multiple patients to receive the same formulation so long as the medication is appropriate to meet the patient's specific needs and goals. *See Allergan USA, Inc. v. Imprimis Pharms., Inc.*, No 8:17-cv-01551-DOC-JDE, 2019 WL 4545960, *11 (C.D. Cal. Mar. 27, 2019). In light of the legal framework governing compounding, the so-called personalization theory also fails and any claims based on that theory cannot proceed.

## C.      Lilly's Theory of Harm Is Improperly Premised on Lilly's Belief that Compounding Should Not Exist

Throughout the FAC, Lilly makes what it characterizes as allegations setting forth how it claims to have been harmed by Fella Health's false advertising or other unfair competition. As to the false advertising claims, the statements Lilly challenges are only false if the Court accepts Lilly's underlying theory—that compounding is not a legitimate practice, and that compounding pharmacies should not be permitted to make or sell compounded versions of tirzepatide medications. *See, e.g.*, FAC ¶¶ 34 (compounded tirzepatide "may (or may not) actually contain tirzepatide molecules," despite FDA maintaining a "green list" of approved tirzepatide API suppliers); 42-46 (compounded drugs cannot be safe and effective because they are not subject to the traditional FDA approval process, despite the FDCA

exempting compounded medications from that approval process); 47-52 (asserting that there is "no plausible justification" for compounding tirzepatide with additives, despite approval from Congress in the FDCA of using such additives in compounding). Of course, as *Nexus* instructs, these are questions that fall squarely within FDCA preemption and cannot be challenged through a private action—however it is framed. *See Nexus Pharms.*, 48 F.4th at 1042. Ultimately, Lilly's alleged harm flows not because of any particular action taken by Defendants, but because the existence of compounded drugs (which Lilly believes should not exist at all) diverts sales away from Lilly's products. *See, e.g.*, *id.* ¶¶ 52, 158-60. Lilly cannot sustain its claims by asserting harm stemming from the manufacture and sale of products explicitly authorized by statute.

Lilly's failure to even mention the shortage period underscores the deficiencies in the FAC's allegations of harm. Despite its extensive discussion of "Lilly's Long History of Developing and Manufacturing Safe and Effective Medicines" (FAC ¶¶ 24-36); "Mounjaro® and Zepbound®" (FAC ¶¶ 37-41) and "Drug Compounding" (FAC ¶¶ 42-61), at no point does the FAC discuss the fact that from December 22, 2022 through March 19, 2025, Lilly was not able to adequately supply these tirzepatide-containing drugs. Therefore, pursuant to federal law, compounding pharmacies (not Defendants) were authorized to compound drugs that were essentially copies of the approved drugs during this period to fill prescriptions written for patients by their medical providers. For that period of time, compounding pharmacies could produce medicines that had the same API (not supplied by Lilly), dosage strength, and route of administration as Lilly's medications.

Many if not most of the allegations of improper competition specifically identified in the FAC took place during the shortage period. In sum, Lilly alleges that Fella Health "is at the heart of a conspiracy [with the Fella Medical entities] to sell illegal knockoff compounded tirzepatide drugs through false and misleading advertising and in violation of California's corporate practice of medicine doctrine." *See* FAC ¶ 3. But the FAC at no point makes a distinction between the shortage period and any other time. This begs the question: how does a factfinder distinguish between **legal** "knockoff compounded tirzepatide" authorized under the FDCA during the shortage and **illegal** "knockoff compounded tirzepatide" which Lilly alleges caused it some form of harm? The Court must make this distinction in considering whether Defendants violated the law, causing harm to Lilly, by prescribing or advertising the availability of

compounded tirzepatide to members. Instead of guiding the Court, the FAC is designed to avoid the issue. The Court cannot follow Lilly down this path and the implications are stark.

In ruling on the original Complaint, the Court found that because Lilly claimed to compete directly with Fella Health in the marketplace, Lilly was entitled to a presumption of commercial injury sufficient to establish standing for its false advertising and unfair competition claims. MTD Order at 9-10. The FAC doubles down on its reliance on this claim. *See* FAC ¶ 156 (alleging Lilly has standing because it directly competes with Defendants). This contention is premised on the unsupported allegations and continued repetition of the theme that a sale made by Fella Health is necessarily a sale lost to Lilly. *See e.g.,* FAC ¶ 13; 156-160 (using a number of different expressions throughout the FAC interchangeably that express the same theme, *i.e.* "steer[ing] patients to Fella's competing products"; "lur[ing] patients away from" Lilly's products; and "diverting customers from Lilly's approved medicines"); *ThermoLife Int'l, LLC v. BPI Sports, LLC*, No. 21-15339, 2022 WL 612669, *2 (9th Cir. Mar. 2, 2022) (must be "something very close to a 1:1 relationship between a plaintiff's lost sales and the sales diverted to a defendant"); MTD Order at 8-10. In reality, FDA determined that at least during the shortage period, Lilly could not meet demand for tirzepatide products. Thus, at least during this time, it is not plausible to allege that absent some misconduct by Defendants, Lilly would have filled patient need.

Lilly's alleged harm to reputation is similarly dubious during the shortage period. Lilly's only plausible argument as to how its reputation could be impacted by a patient who is dissatisfied with an essential copy is that the compounded drug was deficient in its safety and efficacy profile. To make this determination, the Court must necessarily step into the FDA's shoes to determine whether the compounded drug was in fact compounded properly by the pharmacy. Lilly concedes it cannot make such a challenge as it would be preempted by the FDCA. *See* ECF No. 65 at 17 (preemption is not at issue because "Lilly has not alleged Defendants' conduct violates the FDCA"). *Nexus Pharms.*, 48 F.4th at 1044.

The FAC's failure to acknowledge that the compounding landscape was different during the shortage period also calls into question the plausibility and adequacy of the false advertising claims. For example, advertisements which claim (explicitly or implicitly) that the compounded medication contains the same active ingredient as the approved drugs, or statements discussing the clinical studies of the

approved drugs are necessarily not actionable during the shortage period where, by definition, the compounded version is an essential copy of the approved drug. Likewise, for essential copies, there is no requirement that a prescription written for an individual patient includes a change to the approved drug. Critically, most of the statements identified in the FAC that Lilly relies upon in support of its false advertising claims appeared during the shortage period. FAC ¶¶ 79, 81-84, 89-94, 108, 123-25, 135, 137-38, 142, 145, 149. The statements are not actionable.

**D.      Lilly Otherwise Fails to State a Claim for False Advertising Under the "Safe and Effective," "Superiority," or "FDA Approval" Theories**

A false advertising claim under the Lanham Act—and therefore under the UCL and FAL—requires a showing of:

> (1) a false statement of fact in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statement to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement, either by direct diversion of sales from itself to defendant or by a lessening of the goodwill associated with its products.

*Scilex Pharmaceuticals Inc. v. Sanofi-Aventis U.S. LLC,* No. 21-cv-01280, 2022 WL 20286688 at *2 (N.D.C.A. February 24, 2022) (citing *Skydive Ariz., Inc. v. Quattrocchi,* 673 F.3d 1105, 1110 (9th Cir. 2012)); *see also Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997).

1.      <u>The Statements Underlying the "Safe and Effective" and "Superiority" Theories Are Not Literally False</u>

"To demonstrate falsity within the meaning of the Lanham Act, a plaintiff may show that the statement was literally false, either on its face or by necessary implication[.]" *Southland Sod*, 108 F.3d at 1139. "When evaluating whether an advertising claim is literally false, the claim must always be analyzed in its full context." *Id.*

Lilly has not shown that any of the statements it identifies are literally false. Lilly urges the Court to read the advertisements in context but then proceeds to take the advertisements out of context. For example, in Paragraph 138 of the FAC, Lilly alleges that Fella Health's website contains a statement that oral tirzepatide "delivers results that outperform traditional weight loss methods," and attempts to

characterize that statement as suggesting that oral tirzepatide is superior to **Lilly's** products. *See* FAC ¶ 138. However, the webpage provided in that same paragraph actually says, "Our science-backed methodology outperforms traditional weight loss methods" and refers specifically to a comparison between "lifestyle change with meds" and "diet and exercise only." *Id*.; *see also* Complaint at ¶ 83. The statement identified does not refer to Lilly's medicines or any other specific medication. This statement is not a statement of superiority comparing Lilly's medicines to compounded tirzepatide (oral or otherwise). Nor can it support the safety and efficacy theory as the Court has previously held. *See* MTD Order at 14 (rejecting actionability of this particular statement under lack of substantiation ruling).

### 2.    Lilly's "Superiority" Theory Amounts to Puffery

Prohibitions against false advertising only offer relief for false or misleading representations of fact that are specific and quantifiable. *See Cook, Perkiss, & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990). If a statement is opinion or mere puffery, it is not actionable. *See id.* "[P]roduct superiority claims that are vague or highly subjective often amount to nonactionable puffery." *Southland Sod*, 108 F.3d at 1145 (advertising claim that "less is more" was puffery because it constitutes a general assertion of superiority rather than a factual misrepresentation). Here, Lilly founds its superiority theory on advertising claims that oral tirzepatide offers "superior blood sugar control," "dramatically reduce[s] hunger," or provides "best-in-class weight loss." *See* FAC ¶ 135. These statements are subjective and are not susceptible to a determination of truth or falsity and are therefore not actionable. *See Cook*, 911 F.2d at 246; *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024) (comparative assertions about effectiveness not actionable); *Knowles v. Arris Int'l PLC*, No. 17-CV-01834-LHK, 2019 WL 3934781, *12 (N.D. Cal. Aug. 20, 2019) (claims a product was "best in class" were puffery).

### 3.    The "FDA Approval" Theory Does Not Present Any False Statement

Lilly's thinly-pled "FDA Approval" theory also fails to point to any false statement. To avoid running headfirst into preemption, it is an essential requirement of a false advertising claim based on misrepresentation of FDA approval that Lilly identify some statement by Fella Health which, in fact, inaccurately claims that the compounded tirzepatide products prescribed to its members are FDA approved. *See Scilex Pharms., Inc. v. Sanofi-Aventis U.S. LLC*, No. 21-cv-01280, 2022 WL 20286688, *9 (N.D. Cal. Feb. 24, 2022). "[A]llowing a Lanham Act claim to proceed where a plaintiff does not point to

any statement or representation in the defendants' advertising declaring FDA review or approval would, in effect, allow the plaintiff to use the Lanham Act as a vehicle to enforce the [FDCA]." *Id.* (granting motion to dismiss false advertising claim based on implied FDA approval). Lilly does not succeed.

The FAC identifies two examples of Fella Health supposedly representing that the compounded tirzepatide products it sells are approved by the FDA. The first is a TikTok video that Lilly yet again reproduces only partially to create the false impression that it says something it does not. In the video, Fella Health CEO Mr. Cartwright states: "Quick online visit, answer a few questions, and our clinicians create a plan that actually works for your life. With FDA approved supplementation to manage cravings, personal coaching, and all the logistics handled, we make it simple." *See* FAC ¶ 149 n.114. At one point in the video, a screen appears that says: "GLP-1 medication will fix your metabolism so your body burns fat easily." *See id.* The word "tirzepatide" is not mentioned in the advertisement, let alone compounded tirzepatide.[7] Taken in context, it is clear that there is no implication—intended or incidental—that compounded tirzepatide specifically is approved by the FDA. The same is true for the second advertisement, which merely says that "[w]eight loss injections are the newest FDA approved treatment for weight loss" without any reference to compounded medications or tirzepatide. *See id.* ¶ 151.

### 4. Lilly Fails to Adequately Plead Implied Falsity Under Any Theory

If an advertisement is not literally false, a plaintiff must show "that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod*, 108 F.3d at 1140. "Where a statement is not literally false and is only misleading in context . . . proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *Franklin Mint Co. v. Manatt, Phelps & Phillips, LLP*, 184 Cal. App. 4th 313, 348 (2010) (reversing jury verdict and finding no evidence of customer confusion based on statements from one customer reflecting potential confusion).

The advertisements on which Lilly relies to support its contention that Fella Health's advertisement is impliedly false all relate to Lilly's "safety and efficacy" theory and have been rejected by the Court as unable to sustain a claim. Further, Lilly asks the Court to read various separate statements together, arguing that this "context" creates a false impression to consumers. In support of this contention, Lilly

---

[7] The distinction is relevant. Fella Health providers also prescribe Lilly's tirzepatide medicines, as well as other branded and compounded GLP-1 products (i.e. semaglutide).

relies heavily on an excerpt from Fella Health's website that discusses "average weight loss results with *tirzepatide*" and references the SURMOUNT trials—which studied tirzepatide. *See* FAC ¶ 121. It then asks the Court to consider statements like "average 22.5% weight loss" and "science-backed, proven results" with each other and together with the references to SURMOUNT, contending these advertisements read together "necessarily communicate[] to consumers that scientific testing has been done on the efficacy of Fella's Tirzepatide Drugs and has resulted in the clinical outcomes (*i.e.*, 22.5% average weight loss) that Fella advertises." *See id.* ¶¶ 128, 131. But these statements appeared on *different pages* of Fella Health's website, and sometimes on *different websites altogether*. *See, e.g.*, *id.* ¶¶ 126 (referring to an ad run on Google), 127 (referring to advertising on the Delilah website). What is more, there is no evidence that any two advertisements were even *available* to be viewed at the same time, as the FAC merely provides the date of capture. *Compare, e.g.*, *id.* ¶¶ 121 n.96 (websites last accessed April 14, 2026) *with* 123 n.97 (website last accessed January 10, 2025). There can be no reasonable conclusion that the public was misled by the combination of several advertisements where consumers could not or did not actually see the marketing in that context.

### E.    There is No Actionable Civil Conspiracy Claim

Lilly alleges that there was a conspiracy between Fella Health, Fella Medical Florida and Fella Medical California to "unlawfully prescribe and sell compounded tirzepatide drugs" in violation of the UCL and the Lanham. Act. *See* FAC ¶ 202. Civil conspiracy is a "doctrine of liability and not a cause of action itself." *Spencer v. Mowat*, 46 Cal. App. 5th 372, 383 (2020) (citing *ARE II Cases*, 216 Cal. App. 4th 1004, 1021 (2013); *see also Matthews v. Apple, Inc.*, 769 F. Supp. 3d 999, 1016 (N.D. Cal. 2024) ("Under California law, there is no separate and distinct tort cause of action for civil conspiracy.").

As an initial matter, the Fella Medical entities are only named with respect to the previously dismissed CPOM claim and the UCL unfair competition claim. *See* FAC at First Cause of Action; Second Cause of Action. For the reasons discussed herein, the CPOM claim fails to elucidate any harm to Lilly and must be dismissed as to all Defendants. Additionally, the only allegations relating to the Fella Medical defendants with respect to the UCL unfair competition claim are those premised on a violation of the CPOM regulations, as the medical practices are not alleged to have participated in any marketing, advertisement, or other promotion of compounded tirzepatide. *See id.* at ¶ 176. Where the CPOM claim

is due to be dismissed, all claims against Fella Medical California and Fella Medical Florida must be dismissed. In the absence of participation by these entities, there can be no conspiracy, as a conspiracy necessarily requires multiple actors. *See Applied Equipment Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal. 4th 503, 510-511 (1994) (civil conspiracy requires "the formation of a group of two or more persons").

Furthermore, Lilly fails to state a claim for civil conspiracy on the face of the FAC. "Even in a complaint, formulaic recitation and 'conclusory statements' will not suffice to allege conspiracy plausibly." *United Bhd. Of Carpenters & Joiners of Am. v. Building & Cont'l Trade Dep't*, 770 F.3d 834, 842 (9th Cir. 2014). The elements of civil conspiracy are "(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct." *Kidron v. Movie Acquisition Corp.*, 40 Cal. App. 4th 1571, 1581 (1995). "Mere association does not make a conspiracy. There must be evidence of some participation or interest in the commission of the offense." *Kidron*, 40 Cal. App. 4th at 1582 (internal quotations omitted). Lilly only alleges conclusory facts or circumstances to support the formation of a conspiracy between Fella Health, Fella Medical California, and Fella Medical Florida. *See, e.g.*, FAC ¶ 203. Lilly's failure to state specific allegations as to each entity's role is insufficient to state a claim for conspiracy, which should be dismissed.

## CONCLUSION

For all the foregoing reasons, Defendants respectfully request that the Court issue an order dismissing Plaintiff's First Amended Complaint, with prejudice.

DATED: May 18, 2026

**FOLEY & LARDNER LLP**
KATY KOSKI
LEA GULOTTA JAMES
MICAH A. CHAVIN


*/s/ Micah A. Chavin*
Micah A. Chavin

Micah A. Chavin (CA Bar No. 313634)
555 California Street, Suite 1700
San Francisco, CA 94104-1520
Tel: (415) 438-6469
micah.chavin@foley.com

Katy Koski (admitted *pro hac vice*)
Lea Gulotta James (admitted *pro hac vice*)
111 Huntington Avenue, Suite 2500
Boston, MA 02199-7610
Tel.: (617)794-8014
kkoski@foley.com
ljames@foley.com

*Attorneys for Aios Inc. d/b/a Fella Health and Delilah, Fella Medical Group P.A., and Fella Medical Group P.C.*

## CERTIFICATE OF SERVICE

I hereby certify that on May 18, 2026, I electronically filed **DEFENDANTS' MOTION TO DISMISS AMENDED COMPLAINT** with the Clerk of the Court for the United States District Court, Northern District of California, by using the Court's CM/ECF system.

Participants in the case who are registered CM/ECF users will be served by the Court's CM/ECF system.

I declare under penalty of perjury under the laws of the United States that the forgoing is true and correct.

Executed on May 18, 2026, at Boston, Massachusetts.


                                        */s/ Lea Gulotta James*
                                         Lea Gulotta James