David I. Horowitz (S.B.N. 248414)
Yungmoon Chang (S.B.N. 311673)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
dhorowitz@kirkland.com
yungmoon.chang@kirkland.com

James F. Hurst (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
James R.P. Hileman (*pro hac vice*)
Nicholas M. Ruge (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
james.hurst@kirkland.com
diana.watral@kirkland.com
jhileman@kirkland.com
nicholas.ruge@kirkland.com

Gregg F. LoCascio (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5290
glocascio@kirkland.com

Attorneys for Plaintiff
ELI LILLY AND COMPANY

*Additional Counsel on Signature Page*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ELI LILLY AND COMPANY, | ) |
| | ) CASE NO. 4:25-cv-03535-HSG |
| Plaintiff, | ) |
| | ) **ELI LILLY AND COMPANY'S** |
| vs. | ) **OPPOSITION TO DEFENDANTS'** |
| | ) **MOTION TO DISMISS** |
| AIOS INC d/b/a FELLA HEALTH AND | ) |
| DELILAH, FELLA MEDICAL GROUP P.A., AND | ) |
| FELLA MEDICAL GROUP P.C., | ) Date: July 16, 2026 |
| | ) Time: 2:00 p.m. |
| Defendants. | ) |
| | ) Complaint Filed: April 23, 2025 |
| | ) |
| | ) Hon. Judge Haywood S. Gilliam, Jr. |

# **TABLE OF CONTENTS**

**BACKGROUND** ............................................................................................................. 2

     A.    LILLY AND ITS MEDICINES............................................................... 2

     B.    DEFENDANTS AND THEIR ILLICIT SCHEME.................................... 3

          1.    Fella Falsely Advertises Its Drugs as Clinically Proven, FDA-Approved, Superior, and Personalized............................................... 4

          2.    Fella's Non-Physicians Lure Patients Away From Lilly's FDA-Approved Medicines. ........................................................................ 5

     C.    Procedural History ............................................................................... 6

**ARGUMENT** ................................................................................................................. 7

**I.**    **LILLY HAS STANDING TO PURSUE ITS CLAIMS.** ............................... 7

     A.    Fella's Compounding Does Not Immunize Its False Advertising. .............. 7

     B.    Lilly Has Statutory Standing to Pursue Its Corporate Practice of Medicine Claim. ................................................................................................ 9

**II.**    **FELLA'S ADVERTISING IS FALSE AND ACTIONABLE.** ....................... 10

     A.    Fella's Personalization Statements Are False.......................................... 10

     B.    Fella's "Proven Results" Statements Are False........................................ 12

     C.    Fella's FDA Approval Statements Are False............................................ 16

     D.    Fella's Superiority Statements Are False................................................. 17

**III.**    **LILLY'S CIVIL CONSPIRACY CLAIM IS ADEQUATELY PLED.** ........... 19

**IV.**    **CONCLUSION** ............................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan USA, Inc. v. Imprimis Pharms., Inc.*,
2017 WL 10526121 (C.D. Cal. Nov. 14, 2017)........................................................................19

*City of Indus. v. City of Fillmore*,
198 Cal. App. 4th 191 (2011) ...............................................................................................19

*Eli Lilly & Co. v. Adonis Health, Inc.*,
2025 WL 2721684 (N.D. Cal. Sept. 25, 2025) ...............................................................11, 12

*Eli Lilly & Co. v. Mochi Health Corp.*,
2026 WL 1076831 (N.D. Cal. Apr. 20, 2026) ................................................................ *passim*

*Eli Lilly & Co. v. Premier Weight Loss of Indiana, LLC*,
2025 WL 3772342 (S.D. Ind. Dec. 31, 2025)..........................................................................16

*In re Ferrero Litig.*,
794 F. Supp. 2d 1107 (S.D. Cal. 2011).....................................................................................18

*Franklin Fueling Sys., Inc. v. Veeder-Root Co.*,
2009 WL 2462505 (E.D. Cal. Aug. 11, 2009)..........................................................................19

*InSinkErator, LLC v. Joneca Co., LLC*,
163 F.4th 608 (9th Cir. 2025) .................................................................................................17

*LeGrand v. Abbott Lab'ys*,
655 F. Supp. 3d 871 (N.D. Cal. 2023) .....................................................................................14

*Lexmark Int'l, Inc. v. Static Ctrl. Components*,
572 U.S. 118 (2014)....................................................................................................................8

*Lima v. Gateway, Inc.*,
710 F. Supp. 2d 1000 (C.D. Cal. 2010) ......................................................................14, 17, 18

*McCracken v. KSF Acquisition Corp.*,
2023 WL 5667869 (C.D. Cal. Apr. 4, 2023) .....................................................................14, 16

*Novo Nordisk A/S v. Aios Inc. d/b/a Fella Health*,
No. 4:25-cv-06560-YGR, Dkt. No. 56 (N.D. Cal. Mar. 10, 2026)......................................9, 10

*Sandoz Inc. v. Becerra*,
57 F.4th 272 (D.C. Cir. 2023)....................................................................................................4

*Southland Sod Farms v. Stover Seed Co.*,
108 F.3d 1134 (9th Cir. 1997) .......................................................................................1, 13, 14, 18

*Spotlight Ticket Managem*ent*, Inc. v. Concierge Live, LLC*,
   2025 WL 235429 (C.D. Cal. Jan. 2, 2025) ................................................................................18

*ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*,
   648 F. App'x 609 (9th Cir. 2016) ...........................................................................................19

*United States v. Generix Drug Corp.*,
   460 U.S. 453 (1983).............................................................................................................5, 16

## MEMORANDUM OF POINTS AND AUTHORITIES

Lilly's First Amended Complaint ("FAC") brings corporate practice of medicine, false advertising, and civil conspiracy claims.  This Court's prior order already held that Lilly plausibly alleged civil conspiracy, had standing to pursue its false advertising claims, and plausibly alleged that Fella's[1] claims to offer "personalized" products are "literally false."  ECF No. 88 ("Ord") at 17.  The Court dismissed two aspects of Lilly's other claims on narrow grounds: it held that Lilly had not "adequately alleged a causal connection between Defendants' alleged corporate practice of medicine and Eli Lilly's loss of money or property," Ord. at 11, and found that Lilly had not identified "any representation regarding the specific basis for [Fella's] statements" that its products were proven safe and effective, *id.* at 16.

Lilly's FAC directly addresses those narrow grounds.  As to Fella's corporate practice of medicine, the Court's prior decision concluded that Lilly must explain how Fella's unauthorized practice "in itself causes [Lilly] any injury."  *Id.* at 11.  The FAC does exactly that, explaining that Fella's business-driven prescribing decisions steer patients who could and would have been prescribed Lilly's FDA-approved medicines to Fella's compounded products, harming Lilly's sales.  FAC ¶¶ 104–05.  A court in this District recently sustained materially identical allegations against a telehealth platform, holding that the defendant's "influence on prescribing practices … permit[ted] a reasonable inference of reputational damage and diversion of sales" sufficient to confer standing.  *Eli Lilly & Co. v. Mochi Health Corp.*, 2026 WL 1076831, at *7 (N.D. Cal. Apr. 20, 2026).

As to Fella's false claims, the FAC now identifies the specific representations that falsely cite to *Lilly's* clinical trials, which tested *Lilly's* injectable medicines and did not test Fella's drugs.  FAC ¶¶ 108–09, 120–21.  It is black-letter law that an advertiser cannot mislead the public by claiming that studies of someone else's products establish anything about its own products' safety or efficacy.  Since Fella's drugs were not the subject of the testing its advertising cites, those ads are literally false.  *See Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997) ("[I]f the plaintiff can show that the tests ... do not establish the proposition asserted by the defendant, the plaintiff has

---

[1] Fella refers collectively to Defendants: Aios Inc. d/b/a Fella Health and Delilah ("Fella Health") and Fella Medical Group, P.A. and Fella Medical Group, P.C. (together, "Fella Medical Group").

1

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

obviously met its burden of demonstrating literal falsity"). The FAC also now identifies specific representations in which Fella falsely communicates that its products are FDA-approved, FAC ¶¶ 148–54, and falsely claims superiority over Lilly's medicines, *id.* ¶¶ 135–47.

Despite these changes, Fella once again moves to dismiss. But Fella's motion recycles arguments this Court has already considered and rejected in Fella's first motion to dismiss and otherwise fails to meaningfully engage with Lilly's new allegations that directly address the Court's prior ruling. *First*, it again challenges Lilly's standing, contending Lilly's harm flows from the existence of compounded drugs rather than Fella's advertising. That is a mischaracterization of Lilly's claims, which do not turn on the illegality of Fella's products but on Fella's deception. This Court has already found that Lilly has standing to challenge Fella's deception. *Second*, Fella asserts Lilly has not connected the corporate practice of medicine to any injury. But it does not and cannot dispute that its practice of steering patients away from Lilly's medicines harms Lilly. It disputes Lilly's allegations that it steers, but that is a fact issue not resolvable on a motion to dismiss. *Third*, Fella attacks the personalization-based false advertising claim the Court *already* sustained. Lilly's allegations in support of that claim have not changed, and neither should the result. *Finally*, Fella denies that its ads assert its products are clinically proven, FDA-approved, and superior. They unambiguously do and, in any event, that is a factual question that cannot be resolved before discovery. *See, e.g.*, FAC ¶¶ 151–52 (quoting Fella ad claiming "[w]eight [l]oss [i]njections are the newest FDA approved treatment for weight loss").

Fella's motion should be denied in its entirety.

## BACKGROUND

### A.   LILLY AND ITS MEDICINES

Lilly is an international medicine company that has pioneered life-changing discoveries for 150 years. FAC ¶ 24. Lilly's MOUNJARO® and ZEPBOUND® medicines are two groundbreaking examples of Lilly's commitment to developing innovative treatments to meet critical patient needs. *Id.* ¶ 38. MOUNJARO® is FDA-approved to treat type 2 diabetes in adults, and ZEPBOUND® is approved to treat chronic weight management and obstructive sleep apnea in certain adults. *Id.* ¶ 39. They are the only two FDA-approved medicines containing a macromolecule called tirzepatide, which

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

Lilly discovered. *Id.* ¶¶ 38, 41. Both are injectables, meaning they are administered via under-the-skin injections. *Id.* ¶ 41. Lilly manufactures them under strict controls. *Id.* ¶ 25.

### B.  DEFENDANTS AND THEIR ILLICIT SCHEME

Defendants are related companies that purport to offer weight-loss treatments. *Id.* ¶¶ 3, 5, 16–18. Defendant Fella Health is a telehealth platform that purports to offer "Medication Weight Loss for bigger guys," with "Medication shipped to [consumers'] home[s]." *Id.* ¶ 107. Fella Health also advertises through Delilah, a telehealth platform designed for women that advertises "GLP-1 weight loss treatments with personalized care." *Id.* ¶ 112. Defendant Fella Medical Group consists of two medical services corporations that prescribe Fella Health's weight-loss drugs, including compounded oral tirzepatide and compounded injectable tirzepatide mixed with additives like glycine and l-arginine. *Id.* ¶¶ 3, 5.

Compounding is a "practice in which a licensed pharmacist, a licensed physician or, in the case of an outsourcing facility, a person under the supervision of a licensed pharmacist, combines, mixes or alters ingredients of a drug to create a medication tailored to the needs of an individual patient." *Id.* ¶ 42. For example, if an individual patient is allergic to an ingredient in an FDA-approved medicine, a compounding pharmacy could produce a version of that medication that does not contain the allergen. *Id.* Compounded drugs are not FDA-approved, do not undergo clinical trials, are not made pursuant to Current Good Manufacturing Practices ("cGMP"), and are not subject to pharmacovigilance requirements like adverse event reporting. *Id.* The FDA has warned that compounded drugs "do not have the same safety, quality, and effectiveness assurances as approved drugs," and that "[u]nnecessary use of compounded drugs .... exposes patients to potentially serious health risks." *Id.* ¶ 43. The FDA has also expressed "serious concerns with compounded versions of semaglutide and tirzepatide, including dosing errors, use of unapproved salt forms and adverse events—some requiring hospitalization." *Id.* ¶ 46.

Despite these warnings, Fella sells untested, unapproved, and unsafe compounded tirzepatide drugs to consumers through a two-step scheme. It falsely advertises its drugs as proven safe and effective, FDA-approved, "personalized" to the patient's needs, and superior to Lilly's medicines. After luring patients in with false advertisements, its captive prescribers make treatment decisions

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

intended to benefit Fella financially.

### 1.    Fella Falsely Advertises Its Drugs as Clinically Proven, FDA-Approved, Superior, and Personalized.

Across its advertising, Fella promotes its products as clinically tested, FDA-approved, superior to Lilly's medicines, and personalized to individual patients' needs. *Id.* ¶¶ 7–11, 114. The Fella Health website promises consumers "Science-Backed, Proven Results" resulting in "22.5%" weight loss, its Google ads similarly boast an "Average 22.5% Weight Loss," and its Facebook account touts "clinically-backed GLP-1 support" and "clinical results with real results." *Id.* ¶¶ 108–10. Fella cites *Lilly's* clinical trials as its only support for these statements, asserting they "provid[e] robust evidence regarding expected weight loss outcomes with tirzepatide." *Id.* ¶ 121. Fella also assures consumers that its drugs are FDA-approved, flatly asserting that "Tirzepatide is … approved by the FDA for chronic weight management in adults." *Id.* ¶ 121 n.96. Its Google ad, too, says its "Weight Loss Injections are the newest FDA approved treatment for weight loss," and its TikTok account directs patients to its website offering compounded tirzepatide with the statement that it offers "FDA approved supplementation to manage cravings." *Id.* ¶¶ 149, 151.

Fella's advertising goes on to assert that its products are better than Lilly's, claiming that its oral tirzepatide "delivers results that outperform traditional weight loss methods" and "curbs appetite and cravings far greater than alternatives." *Id.* ¶¶ 135, 138. Fella promises consumers "personalized" treatments, claiming it provides "GLP-1 weight loss treatments with personalized care," that it "write[s] personalized prescriptions for [its] existing compounded injectable tirzepatide patients," and that it is "offering personalized tirzepatide prescriptions." *Id.* ¶¶ 112, 155.

None of these statements is true. Tirzepatide is an active pharmaceutical *ingredient* (API), not a drug product. *Id.* ¶ 34. The FDA did not approve "Tirzepatide" because the FDA does not approve APIs in isolation; it approves finished drug products—which is to say, a complete formulation (including both active and inactive ingredients sourced from identified suppliers), in specific container-closure and drug-delivery systems, accompanied by specific labeling with adequate instructions and warnings, made in a specific facility according to prespecified procedures. *Id.* ¶¶ 34, 41; *see, e.g.*, *Sandoz Inc. v. Becerra*, 57 F.4th 272, 280 (D.C. Cir. 2023) ("[T]he FDA approves the

MEMORANDUM OF POINTS AND AUTHORITIES                          CASE NO. 4:25-CV-03535-HSG

drug as a whole ….”); *see also United States v. Generix Drug Corp.*, 460 U.S. 453, 453 (1983) (explaining that “new drugs” require FDA approval of the whole product “and not merely its active ingredients”). Only MOUNJARO® and ZEPBOUND® have received that approval. And only Lilly’s medicines have been clinically tested. The “22.5% weight loss” figure and clinical trials that Fella touts throughout its advertising come from *Lilly’s* clinical trial, which studied *Lilly’s* injectable medicines—not Fella’s compounded drugs. FAC ¶¶ 120–21. These studies do not, and cannot, support claims made about Fella’s compounded drugs. *Id.* ¶¶ 33–35, 120–23, 129–32. Fella has never conducted any clinical testing on its own tirzepatide drugs (much less the scientifically rigorous head-to-head trials needed for comparative superiority claims), and its statements that they are “science-backed,” “proven,” or superior to Lilly’s medicines are therefore false. *Id.* ¶¶ 3, 132, 135, 140. And Fella’s drugs are not “personalized”—Fella sells the same one-size-fits-all products to all consumers. *Id.* ¶¶ 11, 155.

Unsurprisingly, Fella’s products have not lived up to their advertising. When patients complained about the efficacy of its oral tirzepatide, Fella’s Head of Sales, Jordan Pellikan, admitted that oral tirzepatide is “less effective when compared to injectable format due to bioavailability,” and when one customer described Fella’s oral tirzepatide as a “scam,” Pellikan responded, “That’s a fair point.” *Id.* ¶ 144. Fella’s admissions confirm what its advertising conceals: its unapproved and untested drugs do not work as promised, and Fella knows it.

**2.      Fella’s Non-Physicians Lure Patients Away From Lilly’s FDA-Approved Medicines.**

Having lured customers in with false promises, Fella holds on to them—and the revenue they represent—through its corporate practice of medicine. Fella purports to direct its customers to “independent medical groups,” but actually directs its patients to Fella Medical Group, which Fella’s CEO and founder, Richie Cartwright, controls. *Id.* ¶¶ 71, 73. Cartwright studied economics, has no medical training of any kind, and is not a licensed physician in any state. *Id.* ¶ 4. He and other non-physician employees routinely provide customers with medical advice on social media and in direct messages. *Id.* ¶¶ 75–76. When a patient complains that Fella’s tirzepatide is not working, these employees do not refer the patient to a physician or to an FDA-approved medicine; instead, they

5

recommend increased doses and accelerated titration of Fella's own drugs—a practice that financially benefits the corporation. *Id.* ¶¶ 75, 86.

Fella has also changed patients' prescriptions en masse, switching patients from compounded tirzepatide to formulations with l-arginine or glycine in November 2024, and again to glycine formulations in April 2025—changes made for Fella's own financial reasons, not any individual patient's clinical need. *Id.* ¶¶ 88–90, 94. For example, Fella added glycine to its drugs so that Fella's formulation "differs from what's commercially available"—a change driven not by patient care but by Fella's admittedly "mistaken" belief that adding glycine would make it legal to copy Lilly's products. *Id.* ¶¶ 97–98. Many patients learned of these changes only when their prescriptions arrived, and some learned only after experiencing new side effects. *Id.* ¶¶ 90, 93.

As Lilly's First Amended Complaint explains, Fella's corporate practice of medicine results in lost sales to Lilly. Non-physicians make business-driven prescribing decisions that steer patients to Fella's competing compounded products and keep them there, rather than appropriately prescribing Lilly's FDA-approved medicines. *Id.* ¶ 105. But for that economically-motivated control over prescribing, at least some of those patients would have purchased Lilly's medicines, and the resulting diversion of sales is a direct economic injury to Lilly. *Id.* ¶¶ 13, 104–05, 157–60.

## C. Procedural History

Lilly filed this action in April 2025, challenging Fella's corporate practice of medicine as a violation of California's Unfair Competition Law ("UCL"), Fella's false advertising as violations of the UCL, California's False Advertising Law, and the federal Lanham Act, and Defendants' conduct as a civil conspiracy. ECF No. 1. Fella moved to dismiss, and in March 2026, the Court granted that motion in part and denied in part. *Id.* at 18. The Court held that Lilly has standing and may proceed on its false-advertising claims to the extent premised on Fella's "personalized treatment plan" advertising, which the Court found "literally false." *Id.* at 10, 17–18. It further held that Lilly plausibly alleged its civil conspiracy claim.

The Court dismissed two aspects of Lilly's remaining claims with leave to amend. *Id.* at 18–19. It dismissed the corporate practice of medicine claim, advising Lilly to identify the "causal connection between Defendants' alleged corporate practice of medicine and Eli Lilly's loss of money

6

or property," *id.* at 11, and it dismissed Lilly's false advertising claims to the extent they were based on Fella's statements that its products are proven safe and effective, directing Lilly to identify "any representation regarding the specific basis for" Fella's statements, *id.* at 16.  Lilly filed its FAC in compliance with the Court's Order.  ECF No. 94.

<strong><u>ARGUMENT</u></strong>

## I.    LILLY HAS STANDING TO PURSUE ITS CLAIMS.

### A.    Fella's Compounding Does Not Immunize Its False Advertising.

This Court has already held that Lilly has standing to pursue its claims because it "adequately alleged both economic and reputational injury flowing directly from Fella's alleged deception of consumers through its advertising."  Ord. at 10.  Lilly's case is the "classic Lanham Act false–advertising claim in which one competitor directly injures another."  *Id.*  Despite the Court's clear holding, Fella again challenges Lilly's standing, but it has given the Court no reason to change its mind.

*First*, Fella argues that Lilly is harmed not by Fella's false advertising, but by "the existence of compounded drugs."  Mot. at 11.  Fella reasons that Lilly cannot challenge "the existence of compounded drugs," because in certain narrow circumstances compounding is legal under the Food Drug and Cosmetic Act ("FDCA").  *Id.*  Fella's position makes no sense.  Although Fella's products are not in fact legally compounded, that is not a claim Lilly brings in this suit.  Even legally compounded drugs cannot be falsely advertised.  Indeed, the FDA itself has sent dozens of warning letters to compounders and telehealth sites like Fella, warning them that statements promoting compounded drugs—including tirzepatide-based drugs—as being "recognized for effective weight loss"; "delivers the same active ingredient found in the leading GLP-1 weight loss medications – without the need for injections," and "backed by extensive clinical research" were all false and misleading because they imply that the compounded drug products "are the same as an FDA-approved product when they are not."  FAC ¶¶ 12, 59 & n.43.  Whether Fella's compounded products fall within the narrow lawful exemption for compounding (and they do not) does not determine whether Fella's ads about those products are false.  For the same reasons that the Court articulated in its motion to dismiss ruling, Lilly has standing to challenge those false advertisements.

7

***Second***, Fella argues that Lilly cannot recover damages during the period in which the FDA included Lilly's tirzepatide products on its drug shortage list.  Mot. at 11–13.  Fella's attempt to limit Lilly's damages at the motion to dismiss phase is premature and wrong on both the law and the facts.

Fella's legal argument is wrong because it assumes that "while that shortage was in effect, compounding pharmacies were permitted to make and supply patients with compounded medications that were essentially copies of Lilly's tirzepatide medicines."  Mot. at 5.  *Eli Lilly & Co. v. Revive Rx, LLC* rejected that theory as contrary to "[t]he FDCA's text, structure, and purpose."  812 F. Supp. 3d 708, 749 (S.D. Tex. 2025).  *Some* restrictions on compounding by *some* types of compounders are lifted *if* an FDA-approved medicine is not "commercially available."  *See id.*  ("[A] drug shortage lifts certain compounding restrictions only for those who compound under Section 503B.").  Being in shortage does not make a product commercially unavailable.  "A product is 'commercially available' if it is 'able to be bought and sold by people,'" and a medicine in shortage can still be bought and sold.  *Id.* at 750 ("[M]anufacturers may still sell, and at least some consumers may still purchase, the drug in shortage.").

Fella's factual argument is wrong because it assumes that "Lilly cannot 'lose any sales because it was operating at its full capacity.'"  *Revive*, 812 F. Supp. 3d at 750; *see also* Mot. at 12.  The *Revive* court identified the flaw in this argument too: "FDA may have declared a shortage even though Eli Lilly was not at full capacity, or, if Eli Lilly was originally at capacity, the FDA may have declared the shortage despite Eli Lilly having later increased its capacity."  *Revive*, 812 F. Supp. 3d at 750–51.  Ultimately, "[w]hether Eli Lilly could have sold more tirzepatide during the shortage period is a factual question on which, in this posture, the court cannot rule."  *Id.* at 751.  The same is true here.

Fella also argues Lilly could not have suffered reputational harm during the shortage.  It again assumes that Lilly's harm depends somehow on the illegality of Fella's drugs, so that the Court would have to "step into the FDA's shoes to determine whether the compounded drug was in fact compounded properly by the pharmacy."  Mot. at 12.  That is not Lilly's claim in this case.  Lilly alleges that Fella's manipulations of additives and dosing—driven by commercial rather than clinical motives, FAC ¶¶ 88–105—and its conflation of untested compounded products with FDA-approved medicines, *id.* ¶¶ 156–63, cause patients to associate adverse outcomes or poor efficacy with all

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

tirzepatide products, "including Lilly's," *id.* ¶¶ 102, 162–63. "When consumers fail to achieve desired results," or even "are harmed," "using compounded tirzepatide products from Fella," they "may conclude that tirzepatide is ineffective in general." Ord. at 10; *cf. Lexmark Int'l, Inc. v. Static Ctrl. Components*, 572 U.S. 118, 138 (2014) (finding reputational harm where a competitor "damages the product's reputation by, for example, equating it with an inferior product"). That is just as true during the shortage period as after it, and it requires no regulatory second-guessing; it is the ordinary inference the Court is obligated to draw in Lilly's favor at this stage. *See Revive*, 812 F. Supp. 3d at 751 (finding that Lilly adequately alleged "[the defendant's] sales during the shortage period could have caused [reputational] harm"); *Mochi*, 2026 WL 1076831, at *4–5 (sustaining materially identical reputational-harm allegations).

### B. Lilly Has Statutory Standing to Pursue Its Corporate Practice of Medicine Claim.

In its prior order, this Court instructed Lilly to identify "a causal connection between Defendants' alleged corporate practice of medicine and Eli Lilly's loss of money or property." Ord. at 11. Lilly's FAC has done exactly that.

In its amended complaint, Lilly explains that Fella is improperly "directing their captured physicians to prescribe compounded products instead of FDA-approved products" and encouraging patients to "stay on Fella's Tirzepatide Drugs." FAC ¶¶ 13, 88, 105. In effect, Fella's "business-driven medical decisions (made by non–physicians) … steer patients away from Lilly's FDA-approved medicines to Fella's products." *Id.* But for Fella's "control and influence over prescribing decisions, at least some patients would have purchased Lilly's FDA-approved medicines instead," and the "resulting diversion of sales proximately causes *economic injury* to Lilly." *Id.* ¶¶ 104, 105 (emphasis added); *see also id.* ¶ 13 ("Fella's violations of California's corporate practice of medicine ... result in *lost sales* to Lilly.") (emphasis added).

This Court has already found similar allegations that Fella "steer[s] patients away from Lilly's" medicines sufficient to show economic injury. Ord. at 10. So has the court in *Mochi*, 2026 WL 1076831, at *6–8. In that materially identical case, also brought by Lilly against a telehealth entity illegally directing prescriptions of compounded drugs, Lilly's allegations of "[defendant's] influence on prescribing practices … permit[ted] a reasonable inference of reputational damage and diversion

MEMORANDUM OF POINTS AND AUTHORITIES ¶¶                                      CASE NO. 4:25-CV-03535-HSG

of sales" sufficient to confer standing. *Id*.; *see also Novo Nordisk A/S v. Aios Inc. d/b/a Fella Health*, No. 4:25-cv-06560-YGR, Dkt. No. 56, at 8, 16 (N.D. Cal. Mar. 10, 2026) (finding allegations that Fella "harmed [the plaintiff] because [its alleged corporate practice of medicine] purportedly steered customers away from [plaintiff] and towards Fella Health and caused [plaintiff] to lose market share and sales" sufficient).

Fella does not deny that steering patients to its compounded tirzepatide drugs injures Lilly. Instead, it disputes the plausibility of Lilly's steering allegations, demanding a specific "example of a medical provider foregoing her medical judgment in writing what amounts to an unlawful prescription made at the direction of a non–licensed individual ... where a commercially available drug product was the appropriate course of treatment." Mot. at 6–7. But that is not the standard. On a motion to dismiss, Lilly need only allege facts supporting a reasonable inference that Fella is unlawfully influencing prescription decisions. And it has, describing how unlicensed employees direct individual patients' prescription dosages (FAC ¶¶ 75–87), and how Fella has directed prescription switches *en masse* based on its commercial interests rather than clinical need (*id.* ¶¶ 88–100). It is not required to *prove* that statement by identifying specific doctors before discovery has even commenced. Lilly's allegations are more than sufficient to state a claim. *See Mochi*, 2026 WL 1076831, at *7; *see also Novo Nordisk A/S*, No. 4:25-cv-06560-YGR, Dkt. No. 56, at 14–16.

## II.     FELLA'S ADVERTISING IS FALSE AND ACTIONABLE.

Lilly's FAC contains detailed and well-pleaded allegations of four categories of false and misleading statements, each supporting Lilly's false advertising claim. Fella advertises its products as (i) personalized, (ii) clinically proven safe and effective, (iii) FDA-approved, and (iv) superior to Lilly's products. The Court has already addressed the first two categories. It determined that Lilly plausibly alleged Fella's personalization statements are literally false, and it directed Lilly to identify where Fella claims its products are clinically proven—which the FAC now does. As for the remaining two categories, Fella's defenses distort and ignore what its ads actually say, and should be rejected, particularly on a pleadings-based motion.

### A.     Fella's Personalization Statements Are False.

The Court has already held that Lilly's allegations regarding Fella's "personalized treatment"

10

representations state a claim. Ord. at 17. Fella nevertheless asks the Court to revisit that ruling on two grounds: first, that the FAC "intentionally altered" the personalization theory by substituting "new" statements for the one the Court previously sustained, Mot. at 10; and second, that the challenged statements cannot be false because compounded drugs are, in Fella's telling, "per se personalized" under 21 U.S.C. § 353a(a), *id.* Both arguments fail.

***First***, Fella's contention that Lilly swapped out the personalization allegations the Court sustained is simply wrong. Mot. at 10. The "new" allegations Fella points to are not new at all, they are simply stated next to different paragraph numbers as a necessary consequence of Lilly revising its complaint. Specifically, both the amended and the original complaints allege that Fella claims it "write[s] personalized prescriptions for [its] existing compounded injectable tirzepatide patients" and is "offering personalized tirzepatide prescriptions." FAC ¶ 155; Compl. ¶ 75. And the allegation Fella claims was removed is still there. Both the original and amended complaints point out that Fella falsely tells consumers it "pair[s] innovative GLP-1 weight loss medications with personalized treatment plans tailored to your unique biology and needs." FAC ¶ 135 n.102; *see* Compl. ¶ 83 n.63. The Court already determined that those exact personalization statements are "literally false." Ord. at 17. Nothing in the FAC changes the basis for that conclusion, and the Court's prior holding should not be disturbed.

***Second***, Fella also recycles its previously rejected argument that its statements are true because compounded medicines are "per se personalized" if they comply with Section 503A of the FDCA. Mot. at 10; *see also* ECF No. 58 at 20 ("Personalization [under 503A] does not mean that every compounded medication must be different for every patient.").[2] The FDA disagrees, warning telehealth providers it is "false or misleading" to say "[c]ompounded GLP-1 medications are personalized versions" of tirzepatide. FAC ¶ 59 n.43. And this Court has already correctly rejected Fella's argument. Ord. at 17. As other courts in this Circuit have explained, "FDCA compliance is irrelevant to whether the advertising of 'patient–specific,' 'tailored,' or 'individualized treatment' is

---

[2] Even if compliance with § 503A could render a drug "per se personalized," whether Fella's drugs in fact comply with that statute—and therefore qualify as personalized—would be a factual question inappropriate for resolution on a motion to dismiss.

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

false." *Eli Lilly & Co. v. Adonis Health, Inc.*, 2025 WL 2721684, at *8 (N.D. Cal. Sept. 25, 2025); *see also Mochi*, 2026 WL 1076831, at *15 (rejecting argument that "compounded medications are 'personalized' by definition"). Because Fella's advertising, "as understood by 'any linguistically competent person,' would lead to the belief that" Fella "tailor[s] changes in dosage or formulation ... to individual patients," that advertising is literally false. *Adonis*, 2025 WL 2721684, at *8; *Mochi*, 2026 WL 1076831, at *15.

### B.      Fella's "Proven Results" Statements Are False.

Lilly alleged that Fella makes false statements about the "proven" safety and efficacy of its products. In its prior order, the Court concluded that Lilly "claims [Fella's ads] are 'false' because they are not substantiated," and that such "lack of substantiation" claims were not actionable. Ord. at 15–16. It advised Lilly to identify Fella's "representation[s] regarding the specific basis for its statements about the weight loss results typically achieved for its patients." *Id.* Lilly's FAC does just that, explaining how Fella falsely bases its "proven results" statements on Lilly's clinical studies.

Specifically, Fella represents that its statements about the efficacy of its products come from "[c]linical trial data from the SURMOUNT program." FAC ¶ 121. On a page titled "How Much Weight Will I Lose on Tirzepatide? *Clinical Data* & Expectations," Fella describes at length the results of the SURMOUNT clinical trials, claiming that "[p]atients on tirzepatide" see those results. *Id.* ¶ 121 n.96 (emphasis added). It then uses that data throughout its advertising, claiming that patients "typically lose an average of 22.5% of their body weight," touting "Average 22.5% Weight Loss" in its Google ads, and pairing a "Science–Backed, Proven Results" header with a "10–22.5%" "Avg. Weight Loss" graphic on its website. *Id.* ¶¶ 123, 126–27. It cites *again* to "clinically-backed GLP-1 support" and "clinical results with real results" in its Facebook advertising. *Id.* ¶ 110. In other words, Fella claims that these studies establish the statements it makes based on them.

But the studies do not and cannot support Fella's statements. That is because the SURMOUNT program tested *Lilly's* tirzepatide medicines, not Fella's drugs, and not "tirzepatide" in the abstract. That distinction makes a world of difference. Tirzepatide has different effects depending on its purity, potency, quality profile, and route of administration. *Id.* ¶¶ 33–35. To use an extreme illustration, drinking a single molecule of tirzepatide in a glass of water is going to have different effects than

12

injecting an FDA-approved dose of Lilly's specific formulation of tirzepatide, manufactured in a particular way to defined specifications and with specific excipients, all of which are characteristics and requirements that not all tirzepatide products share.  It is not true to say, as Fella does, that the SURMOUNT clinical trials can be extrapolated to *anything* containing tirzepatide, in whatever formulation.  The disconnect is especially acute for Fella's oral tirzepatide: the SURMOUNT trials tested only Lilly's subcutaneous injections, and oral tablets differ materially in bioavailability, making those results even less relevant here.  *Id.* ¶¶ 135, 140, 143–44.  Fella's use of additives redoubles the problem—its injectable formulations include a *second* biologically active molecule whose interaction with tirzepatide has never been clinically studied.  *Id.* ¶¶ 47–49.  Thus, the SURMOUNT program says nothing about Fella's tirzepatide drugs and no "clinical results" about Fella's drugs exist.  *Id.* ¶¶ 3, 133.  As this Court has explained, following the Ninth Circuit, "if the plaintiff can show that the tests ... do not establish the proposition asserted by the defendant, the plaintiff has obviously met its burden of demonstrating literal falsity."  Ord. at 16 (quoting *Southland*, 108 F.3d at 1139).  Here, the SURMOUNT clinical trials Fella cites do not establish the truth of its statements, so Lilly has demonstrated the literal falsity of Fella's advertisements.

Once again, another court in this district has recently allowed similar claims to proceed on materially similar allegations.  In *Mochi*, the defendant's website told consumers that patients taking "tirzepatide" could expect to lose "over 20% of body weight" while citing Lilly's SURMOUNT-1 and SURPASS trials, and so "falsely communicating to consumers that those results are those of its compounded tirzepatide products too."  First Amended Complaint ¶¶ 175, 178, *Eli Lilly & Co. v. Mochi Health Corp.*, No. 3:25-cv-03534-JSC (N.D. Cal. Nov. 14, 2025), ECF No. 99.  The Court found standing and rejected the defendant's argument that Lilly merely asserted "lack of substantiation" claims.  2026 WL 1076831, at *13.  The Court explained that "Lilly's actual argument differs" from a lack-of-substantiation theory because "Lilly alleges [the defendant's] statements misled consumers into believing the SURMOUNT and SURPASS studies actually considered compounded medication.  The issue is not whether [the defendant] had a basis for its statements, but rather, whether [the defendant] misrepresented the contents of the studies."  *Id.*  The court held that "Lilly has plausibly alleged an actionable misrepresentation as to the contents of the SURMOUNT

MEMORANDUM OF POINTS AND AUTHORITIES                              CASE NO. 4:25-CV-03535-HSG

and SURPASS clinical studies." *Id.* The same allegations, about the same trials, against a similarly situated compounder, compel the same result here.

Fella makes four meritless arguments in an effort to defend its false efficacy statements. **First**, it asserts its ads "discuss[ing] 'average weight loss results with tirzepatide'" are true because they are based on "the SURMOUNT trials—which studied tirzepatide." Mot. at 16. As discussed above, not all "tirzepatide" is the same. As the FDA has repeatedly warned compounders and telehealth sellers like Fella, it is false and misleading to advertise that a compounded drug "delivers the same active ingredient" as an FDA-approved medicine. FAC ¶¶ 59 & n.43. But, in any event, Fella's references to "tirzepatide" refer not to the molecule, but to Fella's own "tirzepatide" products. Fella promises patients that "Tirzepatide is ... approved by the FDA for chronic weight management in adults," and on the same page invites them to "lose weight with medical support" next to images of Fella-branded products. *Id.* ¶ 121 n.96. It never explains that its "Tirzepatide" product is not the tirzepatide medicine discussed in the studies, nor that "tirzepatide" as a standalone active ingredient is not, in fact, FDA approved. *Id.* Fella's statements must be "read in the[ir] context." *LeGrand v. Abbott Lab'ys*, 655 F. Supp. 3d 871, 892 (N.D. Cal. 2023) (potentially accurate statements are misleading in context); *see also Southland*, 108 F.3d at 1140 ("Even if an advertisement is not literally false," it can support a false advertising claim if it "misle[ads], confuse[s], or deceive[s] the consuming public."). And in this context, Fella clearly intends to make statements about its own products. *See McCracken v. KSF Acquisition Corp.*, 2023 WL 5667869, at *1, 5 (C.D. Cal. Apr. 4, 2023) (rejecting argument that accurate identification of clinical studies' subject meant "no reasonable consumer would be deceived" and denying dismissal); *Mochi*, 2026 WL 1076831, at *13 ("A reasonable consumer encountering these representations could plausibly be misled as to whether the SURMOUNT and SURPASS studies evaluated compounded medications or spoke to their safety."). Those statements are literally false.

**Second**, Fella argues that its discussion of clinical testing can be separated from its claims of "average 22.5% weight loss" and "science-backed, proven results" because those statements appeared on "different pages of Fella Health's website" and in (for example) Fella's Google ads. Mot. at 16. But these representations "cannot be considered in isolation because they contribute to the deceptive context of the advertising as a whole." *Lima v. Gateway, Inc.*, 710 F. Supp. 2d 1000, 1007–08 (C.D.

14

Cal. 2010) (denying motion to dismiss after assessing advertisements posted across defendants' website, press releases, and third-party review sites, *e.g.*, Amazon, together). Fella's Google ads direct the consumer to "Shop Now" from Fella's website. FAC ¶ 126. And on that website, Fella's "Science-Backed, Proven Results" header, the "10–22.5%" graphic, and the "22.5%" weight-loss figure appear *together on the same product page*, with its citation to the SURMOUNT-trial hyperlinked directly from that page. *Id.* ¶¶ 105, 108, 121, 123–25; Ex. A-1, at 4, 11; Ex. A-2, at 12–17. And the SURMOUNT trial page, in turn, has embedded links inviting readers to "Learn more" about Fella's "Medication Weight Loss." *Id.* ¶ 121 n.96. None of these statements is made in isolation, and the Court should not artificially separate them.

**Third,** Fella asserts that its advertising was true because its statements were made during the time Lilly's medicines were on the FDA's shortage list, and that in that period it was allowed to make tirzepatide drugs that "had the same API (not supplied by Lilly), dosage strength, and route of administration as Lilly's medications." Mot. at 11–13. Again, Fella is wrong on the law—a shortage lifts *certain* "compounding restrictions only for those who compound under Section 503B." *Revive*, 812 F. Supp. 3d at 749. Fella's argument also assumes that Fella made the challenged claims *only* during the shortage and that it in fact made its drugs from "the same API" as used to make Lilly's tested and approved medicines. Those factual assertions are outside the complaint and not cognizable on a motion to dismiss. And neither is true. Many of the challenged statements clearly post-date any shortage. *E.g.*, FAC ¶ 110 (Fella Health Facebook account claiming its tirzepatide has "clinically-backed GLP-1 support," last accessed on Apr. 14, 2026); *see also id.* ¶¶ 126–27, 136, 149–151. And Fella admits that its API was never "supplied by Lilly." Mot. at 11. As FDA has stated, it is false and misleading to claim that "compounded drugs use the same active ingredient as the FDA-approved drugs." FAC ¶ 61 n.50. Lilly's API is manufactured in specific facilities according to trade-secret product specifications that were reviewed and approved by FDA. The resulting API "has a specific profile," including potency, purity, and "other factors that affect how the drug substance will perform." *Id.* ¶ 34. As Lilly's allegations explain, "data collected from clinical studies of Lilly's tirzepatide API says nothing about how another manufacturer's purported 'tirzepatide API' ... will affect patients." *Id.* ¶ 35. Fella's reliance on Lilly's results to advertise its knockoffs is false, and the shortage period

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

does not change that.

*Finally*, Fella argues that Lilly's UCL claim must nonetheless be dismissed, reasoning that the UCL has not "adopted the ... distinction between establishment and non-establishment claims."  Mot. at 8 (quoting *Marshall v. PH Beauty Labs, Inc.*, 2015 WL 3407906, at *1 (C.D. Cal. May 27, 2015)). That misses the point; as Fella's own authority shows, the UCL does distinguish between claims that a defendant's advertisements are actually false and claims that a defendant's representations are insufficiently substantiated.  *Marshall*, 2015 WL 3407906, at *4.  Lilly alleges that Fella's advertisements are "actually false" because Fella tells consumers that its products have been tested when they have not.  *See McCracken*, 2023 WL 5667869, at *4 (sustaining UCL claim where plaintiff alleged that "Defendant's claim that its *products* have been clinically proven to cause and maintain weight loss are false because the products have not undergone any clinical testing at all.").

### C.    Fella's FDA Approval Statements Are False.

Fella contends that Lilly's FDA-approval theory "fails to point to any false statement" because, in its view, its ads do not actually claim its compounded tirzepatide is FDA-approved.  Mot. at 14. That is plainly wrong.  Fella's website says outright that "Tirzepatide is ... approved by the FDA for chronic weight management in adults."  FAC ¶ 121 n.96.  FDA does not approve APIs (like tirzepatide) in isolation; it approves finished products (like MOUNJARO®) complete with labeling, manufacturing process, and instructions for use.  *Id.* ¶ 34; *cf. United States v. Generix Drug Corp.*, 460 U.S. at 453.  And it only approves them for "the conditions prescribed, recommended, or suggested in the proposed labeling."  21 U.S.C. § 355(d); *cf. Eli Lilly & Co. v. Premier Weight Loss of Indiana, LLC*, 2025 WL 3772342, at *8–9 (S.D. Ind. Dec. 31, 2025); *Mochi*, 2026 WL 1076831, at *13 (crediting Lilly's allegations that "the FDA does not approve an active pharmaceutical ingredient for treatment of patients, but rather approves specific formulations of that ingredient that have been subjected to rigorous study.").  Fella's representation that "tirzepatide" is "approved by the FDA" is therefore literally false.  FAC ¶ 121 n.96.  The FDA itself has explicitly warned consumers that advertisements like Fella's are false and misleading because they incorrectly imply that compounded drugs are the same as FDA-approved ones.  *Id.* ¶¶ 58–61.

Fella also argues that its other ads claiming FDA approval for its products are not false because

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

"the word 'tirzepatide' is not mentioned in the advertisement." Mot. at 15. Those ads, however, assert FDA approval for Fella's GLP-1 products *broadly*, necessarily including its compounded tirzepatide products. In a video ad, for example, Fella's CEO promotes "FDA approved supplementation to manage cravings" as the camera displays the Fella Health website under the banner "GLP-1 Medication." FAC ¶ 149. And Fella's Google ads pair the statement "[w]eight [l]oss [i]njections are the newest FDA approved treatment for weight loss" with a hyperlink to the Fella Health website promoting Fella's tirzepatide drugs. *Id.* ¶¶ 151–52. In both cases, the words "FDA approved" appear alongside imagery and links that route consumers to Fella's compounded-tirzepatide offerings. The absence of the word "tirzepatide" from the ad is therefore beside the point: a consumer who clicks through, expecting to find "FDA approved" "GLP-1 Medication," lands on a site selling unapproved compounded drugs—including tirzepatide drugs. Each ad "conflate[s] the FDA approval given to Lilly's specifically formulated tirzepatide medicines with compounded tirzepatide, which has not received that same approval," and is therefore false. *Mochi*, 2026 WL 1076831, at *14 (denying motion to dismiss).

### D.    Fella's Superiority Statements Are False.

Fella's advertising repeatedly compares its products to Lilly's medicines, and those comparative superiority statements are both false and actionable. Fella cherry-picks one of its ads— "[o]ur science-backed methodology outperforms traditional weight loss methods"—and argues it "refer[s] specifically to a comparison between 'lifestyle change with meds' and 'diet and exercise only,'" not a comparison to Lilly's medicines. Mot. at 14. But again, Fella ignores the context and totality of its advertising: Fella repeatedly compares oral tirzepatide with other medications, claiming that it offers "Best-In-Class Weight Loss" "without the hassle of injections" and "curbs appetite and cravings far greater than alternatives." FAC ¶¶ 135 & n.102, 136–38; Ex. A-1, at 16, 18, 19, 26. These superiority statements—which Fella does not dispute—are enough for Lilly's claims to proceed. They also contextualize Fella's assertion that its products "outperform," and in that context, that statement necessarily implies that oral tirzepatide delivers superior clinically proven results—not the trivial proposition that medication beats no medication. *InSinkErator, LLC v. Joneca Co., LLC*, 163 F.4th 608, 616 (9th Cir. 2025) ("A message may be conveyed explicitly or by necessary implication ... from

17

'the words or images' of the advertisement 'considered in context.'"); *see also Lima*, 710 F. Supp. 2d at 1007–08 (denying motion to dismiss where statements "taken as a whole, are likely to deceive" consumers). At a minimum, disagreement over what messages an advertiser's collective statements convey to a reasonable consumer creates a factual dispute that is "inappropriate for resolution on a motion to dismiss." *Spotlight Ticket Managem*ent*, Inc. v. Concierge Live, LLC*, 2025 WL 235429, at *3 (C.D. Cal. Jan. 2, 2025).

Nor does "Lilly's 'superiority' theory amount[] to puffery." Mot. at 14 (citing FAC ¶ 135). Puffery must be evaluated not on the basis of isolated statements but on whether those statements "contribute[] to the deceptive context of the advertising as a whole." *Lima*, 710 F. Supp. 2d at 1007–08. The statements at issue—that Fella's oral tirzepatide provides "superior blood sugar control," "dramatically reduce[s] hunger," and delivers "best-in-class weight loss"—contribute to Fella's overall deceptive message that its products are proven safe and effective. Fella embeds them in a marketing campaign that pairs them with specific clinical metrics, such as statements that its products produce "2–4x better results" than alternatives and achieve an "average of 22.5% weight loss." FAC ¶¶ 123, 135, 138. Those statements—taken together—constitute verifiable comparisons to Lilly's injectable tirzepatide. *See Southland*, 108 F.3d at 1145 ("[A] specific and measurable advertisement claim of product superiority based on product testing is not puffery.").

Fella's cited cases are inapt. They involve vague comparisons untethered to any objective metric—unlike Fella's quantified superiority claims here. *See* Mot. at 14 (citing *Knowles v. Arris Int'l PLC*, 2019 WL 3934781, at *11–12 (N.D. Cal. Aug. 20, 2019) ("five stars" comparison chart was not an "objective" or "specific and measurable" claim); *Oracle Int'l Corp. v. Rimini St., Inc.*, 123 F.4th 986, 1001 (9th Cir. 2024) (claims of security system being "more effective" lacked any "objective, quantifiable metric to measure")). Here, Fella draws its objective metric (e.g., "22.5% weight loss") from Lilly's own studies, and its corresponding claims (e.g., "superior blood sugar control," "dramatically reduce[s] hunger," and "best-in-class weight loss") indicate superiority over Lilly's products on defined characteristics or specific measurements and are therefore not puffery. *See Southland*, 108 F.3d at 1145.

In any event, Fella does not argue that all of the statements Lilly challenges are puffery. In

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

particular, it does not contend that its representations that its products are personalized, proven safe and effective, and FDA-approved are non-actionable puffery. This concession makes puffery an insufficient basis for dismissal. *See, e.g.*, *In re Ferrero Litig.*, 794 F. Supp. 2d 1107, 1116 (S.D. Cal. 2011) ("[W]here at least some actionable statements have been pled, a claim cannot be dismissed on the ground that some statements constitute mere puffery"); *see also Franklin Fueling Sys., Inc. v. Veeder-Root Co.*, 2009 WL 2462505, at *7–8 (E.D. Cal. Aug. 11, 2009) (same).

Moreover, even if Fella's statements were just opinions, they would still be actionable. "[T]here is a well-established exception that an opinion by a speaker who lacks a good faith belief in the truth of the statement is actionable." *ThermoLife Int'l, LLC v. Gaspari Nutrition Inc.*, 648 F. App'x 609, 615 (9th Cir. 2016); *accord Allergan USA, Inc. v. Imprimis Pharms., Inc.*, 2017 WL 10526121, at *10 (C.D. Cal. Nov. 14, 2017). Fella's Head of Customer Sales publicly conceded that oral tirzepatide is "fairly ineffective" and agreed that criticism of it as a "scam" was "a fair point." FAC ¶¶ 142–44. Fella "lacks a good faith belief in the truth" of its statements that oral tirzepatide offers "superior blood sugar control," "dramatically reduce[s] hunger," and provides "best-in-class weight loss," and those statements are therefore actionable. *ThermoLife*, 648 F. App'x at 615.

## III.    LILLY'S CIVIL CONSPIRACY CLAIM IS ADEQUATELY PLED.

Fella argues for dismissal of Lilly's conspiracy claim, reasoning primarily that the conspiracy "fails with the underlying claims." Mot. at 3. In particular, Fella argues that the Fella Medical entities are only implicated in the corporate practice of medicine claim and so must be dismissed if that claim is dismissed. *Id.* at 16–17. But the underlying claims do not fail. This Court already permitted Lilly to proceed on its false advertising claims premised on Fella's false statements of "personalization." Ord. at 18–19. And the FAC follows the Court's direction in supporting Lilly's corporate practice of medicine claim and its additional false advertising claims. Because those claims survive, *see supra*, the conspiracy survives with them. Nor could the Fella Medical entities be dismissed even if the corporate practice of medicine claim were dismissed. The conspiracy is premised on a "common plan and agreement ... to unlawfully prescribe and sell compounded tirzepatide drugs in violation of the California Unfair Competition Law *and* the Lanham Act." FAC ¶ 202 (emphasis added).

Fella also asserts the FAC pleads only "conclusory facts," insufficient to show the formation

19

of a conspiracy, Mot. at 17, but the FAC identifies specific actors, conduct, dates, and motives satisfying each element of civil conspiracy, *see City of Indus. v. City of Fillmore*, 198 Cal. App. 4th 191, 212 (2011) ("elements of a civil conspiracy are (1) the formation of a group of two or more persons who agreed to a common plan or design to commit a tortious act; (2) a wrongful act committed pursuant to the agreement; and (3) resulting damages"): Fella Health's CEO is also Fella Medical Group P.A.'s CEO and simultaneously controls Fella Medical Group P.C. (FAC ¶¶ 4, 6); all three entities operate from the same address (*id.* ¶¶ 16–18); Fella Health's non-physician officers and employees provide medical advice—adjusting dosages and titration schedules—to keep patients on Fella's products, instructions that Fella Medical then implements (*id.* ¶¶ 75–81); the entities together changed prescriptions *en masse* in November 2024 and April 2025 for business reasons, as an employee admitted (*id.* ¶¶ 89, 94, 98); and Fella Medical Group is the exclusive provider servicing all Fella Health patients (*id.* ¶ 71). These detailed allegations go well beyond the "formulaic recitation" that Fella decries.

The motion to dismiss the civil conspiracy claim should be denied.

## IV.   CONCLUSION

For these reasons, Lilly respectfully requests that the Court deny Defendants' motion to dismiss.

MEMORANDUM OF POINTS AND AUTHORITIES                    CASE NO. 4:25-CV-03535-HSG

Dated: June 17, 2026

Respectfully submitted,

*/s/ David I. Horowitz*
David I. Horowitz

David I. Horowitz (S.B.N. 248414)
Yungmoon Chang (S.B.N. 311673)
KIRKLAND & ELLIS LLP
2049 Century Park East, Suite 3700
Los Angeles, CA 90067
Telephone: (310) 552-4200
dhorowitz@kirkland.com
yungmoon.chang@kirkland.com

James F. Hurst (*pro hac vice*)
Diana M. Watral (*pro hac vice*)
James R.P. Hileman (*pro hac vice*)
Nicholas M. Ruge (*pro hac vice*)
KIRKLAND & ELLIS LLP
333 West Wolf Point Plaza
Chicago, Illinois 60654
Telephone: (312) 862-2000
james.hurst@kirkland.com
diana.watral@kirkland.com
jhileman@kirkland.com
nicholas.ruge@kirkland.com

Gregg F. LoCascio (*pro hac vice*)
KIRKLAND & ELLIS LLP
1301 Pennsylvania Avenue, N.W.
Washington, D.C. 20004
Telephone: (202) 389-5290
glocascio@kirkland.com

Joshua L. Simmons (*pro hac vice*)
Jeanna M. Wacker (*pro hac vice*)
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
joshua.simmons@kirkland.com
jeanna.wacker@kirkland.com

*Attorneys for Plaintiff*
*ELI LILLY AND COMPANY*

---

**MEMORANDUM OF POINTS AND AUTHORITIES**    CASE NO. 4:25-CV-03535-HSG